FARMERS CO-OPERATIVE MANUFACTURING COMPANY
v. ALBEMARLE & RALEIGH RAILROAD COMPANY.

*Navigable   Waters—Obstruction—Right   of   Action—Lia-
bility   for   Damages—Measure   of   Damages—New
Trial—Practice.*

1. Navigable waters include all those which afford a channel for
   useful commerce, and such are public highways of common
   right.

2. While the damage recoverable in a civil action founded upon
   the obstruction of a public highway must be special, and
   such as is not common to every one who actually does pass
   or may travel on it, yet the wrong may be to a number or
   to a class of persons, and each. may have a right of redress.

3. The construction of a bridge across a navigable stream without
   any draw therein to permit the passage of boats will render
   the wrong doer liable for special damage to a boat owner
   whose business, in common with other boat owners, requires
   the transportation of material for manufacturing purposes
   from a point below to a point above the obstruction.

4. In such case it is immaterial whether the owner's boat is licensed
   or does business as a common carrier, as well as for the trans-
   portation of the owner's own materials.

5. Where the owner of a boat was compelled by an obstruction
   across a navigable river to unload his cargo of cotton seed,
   but, instead of procuring another conveyance, left the seed
   exposed to the weather, and it was injured ; *Held*, that the
   measure of damages was the value of the boat for the time it
   was delayed, including reasonable wages paid to the crew,
   but that no recovery could be had for injury to the seed from
   exposure, or for the cost of unloading it.

5. Where plaintiff in an action for damages recovers judgment,
   and the only error is in an instruction as to measure of
   damages, a new trial may be granted for the determination
   of that question alone.

CIVIL ACTION to recover damages from the defendant for
the obstruction of the passage of plaintiff's boat by defen-
dant's bridge across Tar River, Tarboro, tried before *McIver*,

*Judge*, and a jury, at June Term, 1895, of EDGECOMBE Superior Court.

The complaint after alleging that plaintiff corporation is the owner of a boat called the Beta duly authorized and licensed to navigate Tar River, a navigable stream from the town of Tarboro up to Shiloh, the place of business of the plaintiff, alleged as follows:

"5. That the defendant constructed across said river at and near the town of Tarboro a bridge without a draw therein, so as to permit the boat of plaintiff to pass under said bridge as it in common with other boats had a right to do; and by reason of the failure by the defendant to have any such draw in said bridge, it became a nuisance, and the defendant thereby obstructed the said navigable stream so that plaintiff's boat could not pass along said navigable stream as aforesaid with its freight.

"6. That the plaintiff used said boat principally for transporting cotton seed and other freight to and from its cotton seed oil mill, situated at Shiloh, as above stated.

"7. That long prior to the commencement of this action and the damage hereinafter complained of, the plaintiff requested the defendant to abate said nuisance and to remove said obstruction to navigation by placing a draw in said bridge, so as to permit its boat to pass under said bridge, but the defendant delayed and refused to do so until after the commencement of this action.

"8. That on about the 1st of April, 1890, to the 5th of April, 1890, inclusive, the plaintiff's boat loaded with freight, to the great loss and damage of plaintiff, was delayed and prevented from navigating said stream by passing under said bridge for five days; and on the 17th day of March, 1891, to the 31st day of March, 1891, inclusive, the plaintiff's boat loaded with freight was delayed and pre-

vented, to the great loss and damage of the plaintiff, for a period of 10 days, by reason of the obstruction and nuisance aforesaid on acount of not being able to pass under said bridge, whereby the plaintiff was damaged to the extent of $525.00.

"Wherefore the plaintiff demands judgment against the defendant for the sum of $525.00 and for cost of this action and for such other and further relief as plaintiff may be entitled to."

The answer of the defendant denied that the plaintiff's boat was duly authorized and licensed to navigate Tar river, and also denied that Tar river was navigable between the defendants bridge and Shiloh, being of such low water that for many months of the year it would not float plaintiff's boat which was the only boat plying on the river above the bridge, and that its trips were dependent on the quantity of rain-fall. The defendant also averred that the boat plied on the river for the purpose of transporting such articles as the plaintiff or its stockholders might require from time to time. The answer further states:

"It is true that defendant constructed a bridge across said river, but denies that it thereby created a nuisance. And that said bridge was constructed many years before the plant of said plaintiff was erected and before it purchased a boat to ply on said river for its convenience in transporting its cotton seed and other freight. That, when said plaintiff began to ply its said boat on said river, the said bridge had been constructed for many years as aforesaid, and that the said boat could, the water being sufficient, safely pass under the bridge, except in very high freshets, and these do not often occur in said river. That said bridge was constructed about twelve years ago, and that, at that time, there was no attempt of any kind, by any person or any corporation, to navigate said stream above

said bridge ; nor since until about three years ago the plaintiff put said boat on the river and attempted to navigate the same above the said bridge for its own uses and purposes ; and even now, the said plaintiff is the only person attempting to navigate said river above said bridge and they have only the one boat which makes only occasional trips as the needs of the plaintiff may demand."

The issues submitted and responses were as follows :

"1. Is Tar river from the defendant's bridge to Shiloh a navigable stream ?    Ans.    Yes.

"2. Was the plaintiff's boat obstructed and prevented by the defendant's bridge from navigating said river between said points on the days named in the complaint?    Ans. Yes.

"3. What damage has plaintiff sustained thereby?    Ans. $402.70, no interest."

E. V. Zoeller, secretary and treasurer of plaintiff, testified that the plaintiff corporation manufactures cottonseed meal, etc., at Shiloh, three miles up Tar river from Tarboro, and owns the steamer *Beta*, which plies between Washington and Shiloh, and is used for carrying the company's own products and those of its customers.    The witness further testified :

"The *Beta* was obstructed in passing up the stream a number of times, but we made no complaint for detention until from March 17th to 31st, and from April 1st to 5th, inclusive of all dates, 1890.    Again January 15th to 29th, 1892, both dates inclusive.    Again March 2d to 5th, April 12th to 28th, 1892, both dates inclusive.    Again numbers of times since action was brought.    Complaints were made to defendant in writing.

"Damages were $225.    Damage sustained March 17th to April 5th, 1890, $8 to $10 per day expenses of maintaining the boat and crew, and $5 per day estimated loss of

profit on freight; we were earning $100 per week freight. January 15th to 29th, 1892, damages expenses of unloading cargo and returning to Sparta for other freight which was waiting for boat, and reloading, $7.29 and $6.75. Damage to plaintiff's cottonseed which boat had to unload on landing at Tarboro on account of boat not being able to pass under defendant's bridge on way to Shiloh, $76.66; board and wages of crew, $122.50; estimated profit on freight, if we had been running, $140, total $343.20. Could not get under railroad bridge and had to unload and go back to Sparta to save some seed there. Letter book, page 5, March 2 to 5, 1892, shows wages and board of crew, 4 days $30, loss on freight by not running, $30, total $60. Damage arrived at the same way as the other. Page 6, letter book, April 12 to 23, 1892, board and wages of crew, $40, estimated loss of profit on freight, $30, total $70.

"Tar river is navigable from bridge to Shiloh. Been running boat from fall of 1888 or 1889. Draw put in bridge about three years ago, since the commencement of these actions. The railroad replied to first letter. Have not paid the plaintiff for the damages.

"Railroad bridge is an obstruction in high water. It requires from 17 to 18 feet from bottom of bridge to water to let this boat pass under. When water rose it shortened this distance. We unscrewed exhaust and steam whistle pipe several times so that boat could pass under bridge. There was a boat on river prior to ours. Beginning about October, as a rule, and continue to run until May or June 1st. We commenced last year between middle of September and October 1st; sometimes there was not enough freight and sometimes not enough water; we have not been stopped this season on account of low water; stopped by county bridge some few times, by high water since the

draw was put in defendant's bridge; boat will carry from 35 to 40 tons; draught from 15 to 18 inches; loaded, about 3½ feet; navigating the river has been a paying business for our company."

"Navigation of river by boat does not depend on rainfall. Can navigate above bridge in ordinary low water; water lower than ordinary low water now and was last week; my boat was stuck just below mill last week and I got some mill hands to shove her off; first time this season. Take her off in summer for want of freight as much as water; I think it probable that I stated May 25th, 1893, that boat was taken off on account of want of water. We always accept freight subject to want of water. Sometimes the river is not navigable."

Witnesses for the defendant testified that the boat *Beta* could not navigate the river above Tarboro in ordinary low water.

The defendant moved the court to dismiss the plaintiff's action for that the complaint therein does not state a cause of action:

"For that it appears from said complaint: That Tar river is a navigable stream; that the defendant has built a bridge across said stream; that said bridge obstructs the free passage of all boats navigating said river; that said bridge is a public nuisance; and that the complaint fails to state and allege that the damage claimed was:

"1. Special and particular to the plaintiff's boat.

"2. That the said obstruction by the defendant's bridge was the immediate and direct cause of the said damage.

"3. That the said obstruction was the special and direct cause of the damage which the plaintiff claims."

The motion was denied and defendant excepted.

The court, after recapitulating the testimony, charged the jury as follows:

Gentlemen of the jury, the first issue submitted to you is, "Is Tar river from the defendant's bridge to Shiloh a navigable river?" Now, on that issue, I charge you that, if you find from the evidence that the water in Tar river from Tarboro to Shiloh is of sufficient depth for a considerable portion of the year and with such regularity that prudent business men can calculate as to its condition with such certainty as to enable them to navigate the river with profit and permit the passage of boats and steamers in common use for internal commerce, you will answer that issue, "Yes." If not, then you will answer it, "No." If your answer to this issue shall be no, that would be an end of this case and you need not consider the others. But, if you should answer this issue, "Yes," you should consider the second issue, "Was the plaintiff's boat obstructed and prevented by the defendant's bridge from navigating said river between said points on the days named in the complaint?" As to that issue, if you believe the testimony, it will be your duty to answer it "Yes." Then as to the third issue, "What damage has the plaintiff sustained thereby?" I charge you in considering this question of damage, that it is your duty to consider the number of days the boat was detained, the cost of maintaining the crew, the damage to cotton seed, if there was any, and the cost of unloading and reloading the boat, if you find that the detention made it necessary to do so and the same was actually done. I charge you that, if you find from the evidence that the plaintiff's boat had, at any of the times of the alleged stopping of its boat on its way up the river, passed under the defendant's bridge and was stopped by the county bridge, the defendant would not be liable for any damage caused by that stopping, and you should deduct this from the plaintiff's claim. I am asked to charge you, and do so, that the measure of damages is not the amount

the boat might have earned in freight, but the amount of actual expense while the delay lasted and actual damage to cottonseed, and the cost of unloading and reloading the boat. If you find from the evidence that the plaintiff could have pursued its business on that part of the river below the bridge, and it was not necessary for the boat to remain tied up and idle, then the damage would be the maintenance of the crew, the damage to the cotton seed and the cost of unloading and reloading the boat.

"As to the interest, that is a matter with you ; can allow it or not as you please."

There was a verdict for the plaintiff and from the judgment thereon the defendant appealed.

*Mr. H. G. Connor*, for plaintiff.
*Mr. John L. Bridgers*, for defendant (appellant).

AVERY, J.: The most interesting question presented by this appeal is whether the plaintiff in any aspect of the evidence has shown such special damage as would entitle him to redress by civil action for a public nuisance.

The law provides an adequate remedy for the wrong to the public and thereby prevents a multiplicity of vexatious private actions. But in order to the maintenance of a civil action by an individual, in addition to the indictment by the State, it is not made incumbent on him to show an injury from which he is the sole or even a peculiar sufferer. The damage recoverable in a civil action founded upon the obstruction of a public highway must however be such as is not common to every one who actually does pass or may travel over the highway. It must be unusual or extraordinary but not necessarily singular. While the wrong must be special, as contradistin-

MANUFACTURING COMPANY *v.* RAILROAD.

guished from a grievance common to the whole public, who have the right to use the highway, it may nevertheless be the common misfortune of a number or even a class of persons and give to each a right of redress. The amounts of damage recoverable by them may vary according to the extent of the loss shown in each case, but every one of them may maintain his status in court by alleging and proving precisely the same sort of wrong caused by the same obstruction. For instance, in the familiar case of the plaintiff who was injured by falling into a ditch dug by another across the public highway, referred to by the elementary writers and the courts to illustrate the principle upon which civil actions are maintainable in such cases, it would not have impaired the right of the first man who suffered from falling into it, if a dozen of his neighbors had tumbled into it afterwards on the same day and had received more serious injury than he. So in *Downs* v. *City of High Point*, 115 N. C., 182, where the municipality created a public nuisance by negligence in allowing a sewerage ditch to discharge its contents in a place where the nauseous smell annoyed the whole public, but gave to the plaintiff a right of action because of his sickness and that of members of his family, due solely to the disagreeable odors, it would have been none the less competent for him to claim the right to show special damages, or such as was not common to the whole public, because it appeared that other families in the vicinity and on all sides of the defective ditch had suffered in a similar way and claimed like redress in the courts.

Bishop, in his work on non-contract law, section 424, by way of illustrating the principle we are discussing says: "So, likewise, it is a nuisance to obstruct a navigable stream; therefore, if one is by such obstruction prevented from fulfilling his contract, he can maintain a civil suit

against the obstructor." The first authority cited to sustain the author's view was *Dudley* v. *Kennedy*, 63 Me., 465, where the facts were that the plaintiff, who had engaged to transport rocks and gravel in boats on the Kennebec river, which is a navigable stream, was prevented from carrying out his contract by a boom placed across the river between the point at which the rock and gravel were procured and the point of delivery, and the court held that the defendant was liable in a civil action for special damage. Though few of them are so directly in point as the case just cited, there is no dearth of authorities in which the general principle, as we have formulated it, is so fully sustained as to make its application to the case at bar obvious and the deduction inevitable. *Guesley* v. *Codling*, 2 Bingham (9 English Com Law) 407; *Chichester* v. *Lithoridge*, Nile's reports (C. Pl.) 70, 74; *Hughes* v. *Heiser*, 2 Am. Dec., 459 (1 Binney) 463; *Rose* v. *Miles*, 2 M. & S., 101; *Burroughs* v. *Pixley*, 1 Am. Dec., 56 (1 Root 362.)

It is not material whether this particular boat was licensed or whether other individuals owned boats that were engaged in navigating the river. If the plaintiff suffered damage common to a class whose business required the transporation of material for manfacturing purposes from a point below the obstruction to a plant located above it, but not common to the whole public, his right is not impaired by the fact that the boat was doing business as a common carrier as well as for the manufacturers who owned it. The case of *Dunn* v. *Stove*, 2 Car. Law Rep., 241, falls far short of sustaining the defendant's contention. There, the plaintiff claimed special damage because a dam placed by the defendant across the stream below the plaintiff's riparian possessions obstructed the passage of fish, and prevented the plaintiff from catching and

using them.   The court seem to have rested the decision entirely upon the ground that the fish were not the property of the plaintiff but were subject to become the property of any person living on the stream upon reclaiming them.   Chief Justice TAYLOR delivering the opinion said: "But what property could plaintiff have in the fish in their wild state, before they ascended to the water flowing over his land ?   In animals *ferae naturae* a man may have a qualified property which continues only while they are in his possession or under his control ; and *so long they are under the protection of the law.*   But the defendant has the same extent of ownership in them, in virtue of which he might have caught them in his own waters and thus have done an equal injury to the plaintiff's fishery."   The cotton seed which the plaintiff was transporting up the river was its property and was in a boat, which was private property, and was entitled under the protection of the law to pass over the highway without obstruction and damage growing out of detention.   We understand the court to broadly intimate that, had the injury complained of in *Dunn v. Stove, supra,* grown out of the detention of property instead of fish by the obstruction, a different principle would have applied.   Though any and every person had the right to transport goods and chattels along the river, just as the whole public might have enjoyed the use of the highway which was traversed by the ditch, a right of action accrued only to those who attempted to avail themselves of this privilege, and suffered by the detention of goods in the one case and from injury to their persons or property in the other.   *Rose v. Miles, supra.*

"Navigable waters include all those which afford a channel for useful commerce. Such waters are public highways of common right." 16 Am. & Eng. Enc., 236.   "It is not necessary that such waters be fit for navigation at all

times, but their capacity therefor must recur with regularity." 16 Am. & Eng. Enc., 243, note 1; *Commissioners* v. *Lumber Co.*, 116 N. C., 731. Upon the testimony, which was not controverted, the defendant clearly had no cause to complain of the instruction which left the question of navigability to the jury under the foregoing rule.

We are of opinion, however, that the court erred in allowing the jury to consider the cost of loading and unloading the cotton, and of damage to the cotton seed by exposure after they were unloaded. The damage to the cotton seed was caused directly by leaving them exposed, not by the obstruction. If they had been kept in the boat or stored in a well-constructed warehouse, they would have remained uninjured after being detained with the boat for want of a draw in the bridge. The plaintiff was clearly entitled, as damages, to the reasonable worth of the boat for such time as it was detained by the obstruction; and, in determining what the boat was worth, it was competent to consider wages, if reasonable, paid to the hands, as the value of its services were to some extent dependent upon the cost of the crew. *Guesley* v. *Codling*, *supra*. If the plaintiff during the period of detention had provided other means of transporting the cotton seed around the bridge to the mill above, the rule would have been the same as that applicable to detained passengers (*Hansley* v. *Railroad*, 115 N. C., at page 609, and the authorities there cited), and the reasonable cost of carrying them by another route might have become an element of the damage assessed. In the case of *Rose* v. *Miles*, *supra*, Lord Ellenborough said: "He (the plaintiff) has been impeded in his progress by the defendants wrongfully moving their barge across and has been compelled to unload and carry his goods over land, by which he has

MANUFACTURING COMPANY *v.* RAILROAD.

incurred expense, and that expense is caused by the act of the defendants. If a man's time or his money is of any value, it seems to me that this plaintiff has shown a particular damage." BAYLEY, J., said that the plaintiff had placed the defendant in a situation that he unavoidably must incur expense in order to carry his goods another way, while DAMPER, J., said "The expense was incurred by the *immediate act* of the defendant, for the plaintiff was forced to unload his goods and carry them overland. If this is not a particular damage, I scarcely know what it is." *Chichester* v. *Lithbridge, supra.* But the plaintiff, instead of procuring another conveyance for the cotton seed, left them exposed, so that they were injured. The measure of damage, therefore, was the reasonable cost of the boat, which was in the employment of the plaintiff during the period of detention. It is true that, upon a familiar principle, the defendant might have claimed a deduction from the aggregate value of its services during such time, of any sum which the boat and crew actually earned, but no evidence of that nature was introduced. *Hassard-Short* v. *Hardison*, 114 N. C., at page 482.

A different case might have been presented if the plaintiff had been transporting a cargo to a market above and had lost the advantage of the market. *Dudley* v. *Kennedy, supra,* but the gravamen of the complaint here is the cost incurred by detaining the boat. See *Guesley* v. *Codling, supra.*

We conclude, therefore, that there was error in the instruction given as to the proper measure of damage, while there was no error in the other rulings complained of, and a new trial will be awarded only upon the question of the amount of damage which the plaintiff is entitled to recover. *Tillett* v. *Railroad*, 115 N. C., 662. New trial as to damage.                              New Trial.