R. G. McMANUS v. SOUTHERN RAILWAY COMPANY.

(Filed 19 May, 1909.)

1. Nuisance, Public—Private Rights—Special Damages.

The doctrine that a private citizen can only recover damages by reason of a public nuisance, by showing some injury peculiar to himself and differing in kind and degree from that suffered by the public generally, applies only to that class of nuisances which are, in strictness, public nuisances, without more—*i. e.*, an unlawful interference with a public right—a right enjoyed by the general public, as in case of user of a public highway; but the doctrine does not obtain where the nuisance, though public from its extent and placing, by its very existence involves the invasion of the personal and private rights of individuals.

2. Same—Evidence.

In nuisances of this second class, sometimes termed "mixed nuisances," an actionable wrong arises in favor of all persons who come within its effect and influence, and whose rights of person or property are injuriously affected; and it is not required to sustain such an action that the person injured should establish damage different in kind and degree from others in like circumstances, however numerous they may be. The right of action in such case is sustained by showing the existence of appreciable damage to the plaintiff, whether such damage be special or otherwise.

3. Same—Irreparable Injury.

To sustain an action for a nuisance, public or private, which does not involve the physical invasion of the property of another, it is always required to be shown that some appreciable damage has been suffered or that some serious or irreparable injury is threatened; and unless this is made to appear, a right to nominal damages does not arise.

4. Issues, Insufficient—Judgment—New Trial.

In an action to recover damages for a "mixed nuisance," where the defendant answered, denying the existence of the alleged nui-

sance, and also denying that the plaintiff was the owner ·or lawful occupant of property adjacent thereto 'or within its influence, and 'two issues were submitted—(1) as to the existence of the nuisance, and (2) as to the existence of special damages—and the verdict on the first issue established the existence of the nuisance, and on the second issue negatived the existence of special damage, the plaintiff was not entitled to judgment on such a verdict, because no damage to him of any kind was shown to exist, and, 'so far as appears, he may not own any property adjacent to the nuisance or injuriously affected by it; nor should the defendant have judgment, for the reason that, in order to sustain his action for the alleged injury, plaintiff is not required to ‚show special damage—that is, damage differing in kind and degree from others injuriously affected by the nuisance, but only that the nuisance exists and that he has suffered damage thereby. The two questions submitted, therefore, did. not determine all the essential and issuable facts involved in the action, and the cause should be referred to another jury on issues adequate and fully determinative of the controversy.

ACTION for an alleged nuisance, known as the Old Rock Quarry of the city of Charlotte, tried. before *Councill, J.,* and a jury, at January Term, 1909, of MECKLENBURG.

There was allegation, with evidence, on the part. of plaintiff, tending to show that plaintiff was the owner of a dwelling house and tenement property adjacent to the Old Rock Quarry, in the city of Charlotte, and that—

"3. In or about the year 1890 the said defendant, or its grantors, leased and let the said tract or lot of land in the city of Charlotte for the purpose of opening a rock-quarry, and the said defendant· has knowingly, carelessly and unlawfully permitted, allowed and tolerated its lessee, the city of Charlotte, to open up a rock quarry on said tract or lot of land, and to maintain a nuisance upon said premises, and is now permitting, allowing and tolerating a nuisance to exist and to be maintained on said premises, as hereinafter set out in this complaint.

"4. That the city of Charlotte, about the year 1890, commenced to open up a rock quarry on defendant's said tract or lot of land, and continued to so use said premises as a rock quarry until some time during the year 1906, when it ceased to use said premises as a rock quarry.

"5. That while operating the rock quarry on said premises the city of Charlotte used violent explosives, blasting the rock, throwing large pieces of rock upon the house of this plaintiff, which blasting of rock damaged plaintiff's dwelling by causing the plastering to fall from the walls, by making great holes in the roof, and by damaging the outside walls; the said excavation reaching within a few feet of the plaintiff's premises on South College Street; and at the time of ceasing to use said premises as a rock quarry a large and dangerous excavation was left open, said excavation being from forty to fifty feet deep, and about one hundred yards wide and about one hundred and twenty-five yards long, the said excavation being left exposed and unprotected.

"6. That since the city of Charlotte abandoned the use of the rock quarry the defendant has permitted water to collect and remain in said excavation from five to thirty feet in depth, much of the water being emptied from different parts of the city; which water in said excavation becomes stagnant, emitting an unwholesome odor, to the discomfort and annoyance of this plaintiff and his tenants.

"7. That after the city abandoned the use of said rock quarry the defendant permitted, allowed and tolerated the city to haul and throw into said excavation street cleanings, rotten eggs, decayed fish, dead chickens, dead cats, and various other filth and dead carcasses from all portions of the city, which, together with the stagnant water, sent forth and emitted nauseous and loathsome odors, making the plaintiff's property almost uninhabitable, causing sickness, making the plaintiff's tenants to abandon the property and greatly reducing the rental value of all the plaintiff's property.

"8. That besides a good dwelling house, the plaintiff has on said lot a small dwelling house and several other buildings for business purposes, and on account of the nuisance allowed and permitted by the defendant on said adjoining lot, as above set out, this plaintiff has been unable to rent or get any substantial income from some of these buildings.

"9. That the defendant is guilty of a wrongful and unlawful

150—42

act in maintaining, permitting and allowing said nuisance, above set out, to exist on its lot or tract of land, on account of which this plaintiff has suffered and continues to suffer special and peculiar damages, being an adjoining lot owner, and not only has he been damaged in his health, but he has been and is greatly damaged in his property rights and interests, in that the market value of his said property and the income therefrom has been greatly decreased and diminished on account of the maintenance of said nuisance; all to his great damage in the sum of two thousand dollars ($2,000)."

There was general denial on the part of defendant of the essential portions of the complaint, and evidence tending to support same.    On issues submitted the jury rendered the following verdict:

1. "Did the defendant maintain or permit to be maintained on the premises a public nuisance, as alleged in the complaint?" Answer: "Yes."

2. "What special damages, if any, has the plaintiff suffered on account of said nuisance?"    Answer: "Nothing."

On the verdict, both plaintiff and defendant having moved for judgment, the court signed judgment for plaintiff, ordering an abatement of the nuisance within ten months, and defendant, the Southern Railway, excepted and appealed.

*Plummer Stewart* and *Burwell & Cansler* for plaintiff.
*W. B. Rodman* and *Tillett & Guthrie* for defendant.

Hoke, J., after stating the case: It is very generally held, uniformly so far as we have examined, both here and elsewhere, that in order for a private citizen to sustain an action by reason of a public nuisance, he must establish some damage or injury special and peculiar to himself and differing in kind and degree from that suffered in common with the general public.  *Pedrick v. Railroad,* 143 N. C., 485. This limitation on a right of action, so expressed in many well-considered decisions, must be understood to apply in strictness where the wrong complained of consists in the unlawful interference with some public right, a right held by a plaintiff in common with all members of a community, and does not obtain when a public nuisance involves

also the invasion of the private right of the litigant. In these cases, a person who is injured in some substantial right of person or property is not deprived of his action because the wrong done is so extensive and of such a character and placing that it amounts to an indictable offense. This apparent exception may perhaps be referred to the more general rule at first stated, by considering that any and all persons who come within the sphere and influence of a nuisance to an extent that subjects them to an injury of the kind stated suffers the special or peculiar damage required to the maintenance of an action by the individual. Mr. Wood, in his work on Nuisances, so treats the question (Wood on Nuisances, 2d Ed., sec. 16), referring cases coming within the exception to the head of mixed nuisances, "public, in that they produce injury to many persons, or all the public, and private, because at the same time they produce a special and particular injury to private rights, which subjects the wrongdoer to indictment by the public and also to damages at the suit of the person injured."

The distinction to which we were adverting is very well brought out in the case of *Wesson v. Washburn,* 95 Mass., 95, in which it was held—

"*Private Action for Nuisance General in its Operation.*— Action will lie against owners of a mill for injuring plaintiff's dwelling by shaking and jarring the same, and surrounding it with noisome odors and vapors, although all the other residents of that locality have suffered like injury. The rule that where the right invaded or impaired is a common and public one which every subject of the State may use and enjoy, an individual action does not lie, does not apply to cases where the alleged wrong is done to private property, or the health of individuals is injured or their comfort destroyed by the carrying on of offensive trades, or the creation of noisome smells or disturbing noises, no matter how extensive or numerous may be the instances of discomfort or injury to persons or property thereby occasioned."

And in the opinion, *Chief Justice Bigelow,* speaking to this question, said: "Where a public right or privilege common to every person in the community is interrupted or interfered with,

McMANUS v. RAILROAD.

a nuisance is created by the very act of interruption or inter-
ference, which subjects the party through whose agency it is
done to a public prosecution, although no actual injury or dam-
age may be thereby caused to anyone.   If, for example, a public
way is obstructed, the existence of the obstruction is a nuisance,
and punishable as such, even if no inconvenience or delay to
public travel actually takes place.   It would not be necessary,
in a prosecution for such a nuisance, to show that anyone had
been delayed or turned aside.   The offense would be complete,
although during the continuance of the obstruction no one had
had occasion to pass over the way.   The wrong consists in doing
an act inconsistent with and in derogation of the public or com-
mon right.   It is in cases of this character that the law does not
permit private actions to be maintained on proof merely of a
disturbance in the enjoyment of the common right, unless spe-
cial damage is also shown distinct, not only in degree, but in
kind, from that which is done to the whole public by the nui-
sance.

"But there is another class of cases, in which the essence of
the wrong consists in an invasion of private right, and in which
the public offense is committed, not merely by doing an act
which causes injury, annoyance and discomfort to one or several
persons who may come within the sphere of its operation or
influence, but by doing it in such place and in such manner that
the aggregation of private injuries becomes so great and exten-
sive as to constitute a public annoyance and inconvenience and
a wrong against the community, which may be properly the
subject of a public prosecution.   But it has never been held, so
far as we know, that in cases of this character the injury to
private property, or to the health and comfort of individuals,
becomes merged in the public wrong so as to take away from
the persons injured the right which they would otherwise have
to maintain actions to recover damages which each may have
sustained in his person or estate from the wrongful act.   *   *   *
The real distinction would seem to be this : that when the wrong-
ful act is of itself a disturbance or obstruction only to the exer-
cise of a common and public right, the sole remedy is by public
prosecution, unless special damage is caused to individuals.   In-

such case, the act of itself does no wrong to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong, by injuring property or health, or creating personal inconvenience and annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common' nuisance." See *Manufacturing Co. v. Railroad,* 117 N. C., 579.

The nuisance established by the verdict on the first issue is of the kind considered in the opinion just quoted, and would give a right of action to any and all persons who come within its influence and effect, to the extent of suffering injury to their private rights either of person or property; but plaintiff is not entitled to the judgment given him, by reason of the verdict on the second issue, to the effect that no special damage has been suffered by plaintiff on account of the nuisance, and for the lack of any finding or fact established in the record showing that plaintiff has suffered either injury or damage of any kind done or threatened. There is evidence on the part of plaintiff tending to show both, but neither has been authoritatively established, and the Court is not at liberty to infer or act upon it till this is done.

Where a nuisance has been established, working harm to the rights of an individual citizen, the law of our State is searching and adequate to afford an injured person ample redress, both by remedial and preventive remedies, as will be readily seen by reference to numerous decisions of the Court on the subject. Revisal, sec. 825. *Cherry v. Williams,* 147 N. C., 452; *Pedrick v. Railroad, supra; Reyburn v. Sawyer,* 135 N. C., 328; *Manufacturing Co. v. Railroad, supra; Raleigh v. Hunter,* 16 N. C., 12; *Tarboro v. Blount,* 11 N. C., 384; *Railroad v. First Baptist Church,* 108 N. C., 318. But in wrongs of the kind presented here, not involving any physical interference with the personal or proprietary rights of another, a recovery cannot be had, even for nominal damages, by simply showing that a nuisance has been created or maintained; but plaintiff must go further and show that it has injuriously affected him in some

substantial right or there is imminent danger that it will do so. Where the essential or issuable facts are referred to a jury for decision, and there are no additional facts admitted in the pleadings, or otherwise, and none of the kind of which a court takes judicial notice, the judgment must follow as a conclusion of law upon the verdict. In the case before us the defendant, in its pleadings, has denied that plaintiff is the owner of any property adjacent to this alleged nuisance, or that any property of his is injuriously affected thereby; and, while a perusal of the evidence discloses that no debate was made on that point in the trial below, the Court, as stated, is not at liberty, in a case of this kind, to act upon the evidence, but can only award or refuse relief upon facts established in some authorized way; and, so far as appears, there are no facts so established which show that plaintiff's property comes within the influence and operation of the alleged nuisance, and no damages, special or otherwise, have been shown which in any way affect him. Nor do we think that defendant is entitled to judgment on the verdict as rendered, for the reason that the issues are not fully responsive to the pleadings. As we have heretofore endeavored to show, the nuisance alleged in the complaint, and established by the verdict on the first issue, is of a kind and character which involves the invasion of the rights of all owners or lawful occupants of adjacent property whose individual rights are injuriously affected, and a right of action on any one of them is in no way impaired because the injury done him is the same or similar in kind to that of all others in like circumstance, however numerous. Such owner is not required to establish the existence of damage or injury special and peculiar in reference to the injury generally suffered by other adjacent owners who are similarly situated. As to them, therefore, or any one of them, the second issue imposes a greater burden than is required to establish an actionable wrong against the defendant; and in view of the kind of nuisance alleged and established, we are of opinion that the verdict is not sufficiently full and responsive to entitle either the plaintiff or defendant to judgment, in that it does not determine all the issuable facts embraced in the pleadings, and the cause should be referred to another jury. *Bryant v. Insurance Co.,* 147 N. C., 181.

For the error indicated, the judgment in favor of the plaintiff will be set aside and the cause remanded, that a trial may be had on issues determinative of the rights of the parties involved in the action.

New Trial.

Brown, J., dissenting: I feel constrained to dissent from the opinion of the Court, because I am convinced that upon the issues as answered by the jury, the action should be dismissed. One question only is presented: Can the plaintiff maintain this action on the complaint, answer and verdict?

In his complaint the plaintiff alleged, in substance, that the defendant is maintaining a public nuisance in respect to a large abandoned rock quarry in permitting the city of Charlotte to throw filth and refuse into it, whereby plaintiff is damaged. Why plaintiff does not sue the city of Charlotte is not stated. Upon the trial these issues were submitted by consent, without exception or objection, as being the only issues raised by the pleadings:

"1. Did the defendant maintain or permit to be maintained on the premises a public nuisance, as alleged in the complaint?" Answer: "Yes."

"2. What special damages, if any, has the plaintiff suffered on account of said nuisance?" Answer: "Nothing."

The defendant moved for judgment dismissing the action. The court denied the motion, and defendant appeals, assigning such refusal as error.

There is no other question presented upon this appeal.

A plaintiff cannot have judgment abating a public nuisance when the jury have found that he has suffered no special damage. The remedy is by indictment. *Pedrick v. Railroad,* 143 N. C., 496. Special damage is such damage as is not common to the public. *Pedrick v. Railroad, supra.*

In regard to a public nuisance, *Mr. Justice Connor* says in that case: "It is elementary learning that no private citizen may sue therefor, unless he suffers some damage which is not common to the public; or, to express it affirmatively, he may sue by showing that he sustained some *special* peculiar injury different in kind from the public."

In *Manufacturing Co. v. Railroad,* 117 N. C., 579, the same principle is recognized as well settled in a learned opinion by *Mr. Justice Avery,* who says in opening: "The most interesting question presented by this appeal is whether the plaintiff, in any aspect of the evidence, has shown such special damage as would entitle him to redress by civil action for a public nuisance?"

This special damage, as the learned Judge proceeds to demonstrate, need not be confined to one person. It must be unusual, extraordinary, but not necessarily singular. Mr. Wood says: "The rule is well established that no person can maintain an action (on a public nuisance) unless he sustains a *special damage* therefrom differing from that sustained by the rest of the public." Section 645, Wood on Nuisances.

That this has been recognized law from the earliest times to the present is shown by an examination of text writers and decisions, too numerous to quote. Coke Inst., 560; *Williams' case,* 5 Coke, 72; Joyce on Nuisances, 267-271; *Reyburn v. Sawyer,* 135 N. C., 336.

Not only do the averments of the complaint state facts which constitute a public nuisance, but plaintiff admits it by consenting to the force of the first issue. That being so, and the jury having found that plaintiff suffered no special damage, it would seem that ordinarily the action would be dismissed without much controversy.

Although the plaintiff has not excepted or appealed, the Court orders a new trial of the whole case because the issues submitted, it is said, are not determinative of the issues raised by the pleadings. And this is done *ex mero motu* by the Court, although neither appellant nor appellee asks for it, and notwithstanding that the cause is before us solely upon the motion of defendant for judgment upon the issues. If defendant is not entitled to it, then the judgment, it seems to me, necessarily stands affirmed.

There are two answers to the position of the Court which appear to me to be conclusive. The first is that the form of the issues were agreed upon, and if they are not full enough,

or if they are not properly worded, it is plaintiff's fault. He should have excepted and tendered others. This has been decided repeatedly. Clark's Code, sec. 395.

In *McDonald v. Carson,* 95 N. C., 377, it is held that where issues are submitted, a party cannot be heard to assign error that the court did not submit an issue on a particular question upon which he did not tender an issue. "It is too late," says *Smith, C. J.,* "after the trial, to complain that certain issues were not submitted to the jury if they were not asked for in apt time."

In the case at bar neither party complains of the issues submitted, and the form in which they are expressed are in strict accord with the precedents I have cited. But it is said by the Court that as these issues are not determinative of the issues raised by the pleadings, no judgment whatever can be rendered for either party. It is very singular that no such thought seems to have occurred to the counsel for plaintiff or defendant, both of whom were represented in this Court by some of the ablest lawyers in the State. I am sure they, as well as the learned judge below, will be surprised to learn that the issues they all agreed upon are deemed so wholly insufficient that no judgment for either party can be rendered upon them.

There are only two questions or issues raised by the pleadings. One is the nuisance and the other is the damage, and both were submitted to the jury. The court has not pointed out any other issues raised by the pleadings than those I have named. But the Court says, in effect, that the damages are not to be confined to special damages and that the plaintiff may recover judgment if he "has suffered either injury or damage of any kind done or threatened." While this proposition, I submit, is against all of our own precedents *(Pedrick's case, supra),* yet, admitting it, the fact remains that an issue in respect to damages was submitted and the form of it was approved by plaintiff. If it was confined erroneously to special damages, it was plaintiff's own fault, and if he does not complain, why should this Court find fault? Surely two issues as to damages should not have been submitted, but if an additional issue in respect to some other kind of damage was proper it was incumbent on plaintiff to tender it.

It is perfectly evident that the learned and astute lawyers for the plaintiff framed the damage issue in its present form, because their complaint specifies with care and particularizes the elements of damage and each item thereof, and they constitute special damages only peculiar to this plaintiff within every known and accepted definition of that term. *Pedrick v. Railroad, supra; Manufacturing Co. v. Railroad, supra.*

It is universally held in this country that where damages are specified in the complaint the plaintiff can recover for no other; and all damages must be specially pleaded where, as in this case, they do not *necessarily* flow to the plaintiff from the wrong complained of. 5 Enc. Pl. and Pr., 733, and cases cited. In support of his averment that he is peculiarly injured by the nuisance, the plaintiff alleges, and testifies, that he owns property near the rock quarry complained of; that his house was injured by explosions from blasting; that his property was made uninhabitable from nauseous smells, causing sickness to his tenants and himself; that the rental value of his property was reduced, and that, besides a good dwelling house, the plaintiff has on said lot a small dwelling house and several other buildings for business purposes, and on account of the nuisance allowed and permitted by the defendant on said adjoining lot, as above set out, this plaintiff has been unable to rent or get any substantial income from some of these buildings.

These are the only injuries plaintiff sustained, and they not only come within the definition of special damage peculiar to him, but the plaintiff classified them as such, for he sums up his catalogue of grievances in these words: "That the defendant is guilty of a wrongful and unlawful act in maintaining, permitting and allowing said nuisance, above set out, to exist on its lot or tract of land, on account of which this plaintiff has suffered and continues to suffer *'special and peculiar damages,'* being an adjoining lot owner; and not only has he been damaged in his health, but he has been, and is, greatly damaged in his property rights and interests, in that the market value of his said property and the income therefrom has been greatly decreased and diminished on account of the maintenance of said nuisance, all to his great damage in the sum of two thousand dollars ($2,000)."

This Court has repeatedly held that it will not interfere with the discretion of the trial judge in shaping and submitting issues, if opportunity is given to present evidence upon the issues raised by the pleadings. Clark's Code, sec. 396, and cases cited. Opportunity was not only given, but both plaintiff and defendant did introduce evidence under the issues submitted bearing upon each allegation of the complaint. In fact, if my brethren will read the evidence they will find that the whole of it is strictly pertinent to the issues submitted and that there is none of it applicable to any other issue that could be logically framed as arising upon the pleadings. As no evidence was excluded by the court, we must assume that the plaintiff introduced all he had and all that he could produce on another trial. We are not to assume that the judge erred in charging the jury as to what constitutes special damages, for there is no exception to the charge; both sides seem contented with it, and it is not before us.

The case of *Bryant v. Insurance Co.*, quoted in the opinion, is no authority here, for in that case no issue at all was submitted covering a material matter in dispute necessary to a decision of the controversy. Here, the issue covering the question of damages framed by plaintiff has been submitted, which issue is peculiarly responsive to the allegations of the complaint, and the character of the evidence offered fits it exactly and would fit no other issue.

The learned judge below and the twelve jurors had better opportunity to judge of the value of plaintiff's evidence than we have, and if the "twelve" erred in finding the second issue, the plaintiff seeks not to correct it by excepting and appealing, and why should this Court undertake to do so? In no event, I submit, is the Court justified in setting aside the findings already made and ordering a new trial. They should be permitted to stand, as no error has been assigned by either side affecting them.

If other additional issues are deemed essential and necessary to be determined before any judgment can be rendered for either party, then the Court shall follow established precedents. In *McDonald v. Carson,* 95 N. C., 378, *Chief Justice Smith*

says: "Where, in the opinion of the Court, additional findings are necessary in order to do justice between parties, the case may be sent back for trial of *additional issues."* But inasmuch as every allegation of the pleadings and every word of the evidence are directly pertinent to the issues submitted, I fail to see the necessity for any further findings. To my mind it is plain that the jury have already passed upon the entire case, and, under such circumstances, for the Court of its own motion to order a new trial appears to me, with entire deference for my brethren, to be done at variance with the practice of the Court.