JANE MOSES, GRAYSON MOSES AND WIFE, MAE MOSES; MARVIN SMITH AND WIFE, FLORENCE SMITH; MARY MOSES, WIDOW; BERTHA MOSES, BEN LEE MOSES, R. E. MOSES, JANIE MOSES, ALTIE MOSES AND LYDA MOSES, BY THEIR NEXT FRIEND, BERTIE MAE MOSES, v. TOWN OF MORGANTON, WESTERN CAROLINA POWER COMPANY, AND INTERNATIONAL SHOE COMPANY.

(Filed 31 January, 1928.)

1. **Eminent Domain—Compensation—Grounds Therefor—Ponding Waters —Pollution—Nuisance—Private Nuisances—Nature of Injury and Liability.**

In condemnation of land for ponding waters, the person whose land is condemned has a right to compensation for the land taken, and when the land so taken is a part of an entire tract, for resulting depreciation to the part not taken, and for special damages resulting from the creation of a nuisance by the pollution of the water ponded, when such is proven, since the condemnation of the land looks to the impounding of water in its natural state, and not to polluted water.

2. **Judgment — Conclusiveness of Adjudication — Matters Concluded — Estoppel by Judgment—Res Adjudicatur.**

A prior judgment is an estoppel to all subsequent actions as to the issues adjudicated, but not as to issues which might have been included in the prior action, but were not.

**3. Same.**

In a condemnation of part of a tract of land for ponding waters, when the compensation for the land taken, and the depreciation resulting therefrom to the part of the tract not taken is adjudicated, but the issue of damages resulting from the creation of a nuisance by the pollution of the waters impounded is withdrawn from the jury and the opposing party does not object, the condemnation proceeding does not bar, under the plea of *res adjudicatur*, the right of action on the issue of the private nuisance.

**4. Parties—Defendants—Joinder.**

When three parties contribute to the causing of a nuisance by impounding polluted waters, one by damming the stream and the other two by polluting the stream above the dam, they are joint *tort-feasors*, and are properly joined as defendants, and the payment by one to the plaintiff, under a prior condemnation proceedings, of consideration for the land taken for that purpose, and for depreciation to the adjoining land not taken resulting therefrom, does 'not release him from liability for the creation of a nuisance not contemplated in the condemnation proceeding, and therefore does not release the other two on this cause of action.

**5. Appeal and Error—Review—Law of Case—Stare Decisis.**

A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal.

APPEAL by plaintiffs from *Townsend, Special Judge,* at August Special Term, 1927, of BURKE. Reversed.

*L. E. Rudisill and Avery & Patton for plaintiffs.*
*W. S. O'B. Robinson, Jr., Spainhour & Mull, S. J. Ervin and S. J. Ervin, Jr., for Western Carolina Power Company.*
*J. D. Williamson, A. Hall Johnston, S. J. Ervin and S. J. Ervin, Jr., for International Shoe Company.*

CLARKSON, J. In February, 1925, Western Carolina Power Company, one of the defendants in the present action, completed the erection of a dam on the Catawba River below the premises of the plaintiffs, the dam being a part of a hydro-electric power plant. On or about 14 March, 1925, the Western Carolina Power Company, under and by virtue of the laws of the State, filed a condemnation proceedings against all the plaintiffs, the respondents or defendants in that action, some of them being minors, seeking to condemn thirty-one and one-half acres of the lands of plaintiffs. The action was appealed to this Court. It was held, in part, that under the statute that requires negotiations before condemnation that no attempt need be shown to purchase from minors who are under disability. *Power Co. v. Moses,* 191 N. C., p. 744.

See *Winston-Salem v. Ashby,* 194 N. C., p. 388.  The respondents, or defendants in that action, plaintiffs in the present action, set up in their answer:

"Sec. 3. That the tract or parcel of land which petitioner seeks to acquire is a valuable part of the entire tract of land (some 125 acres) belonging to respondents, and is a necessary and indispensable part thereof, and its taking would greatly and irreparably impair the value of the remaining portion of said tract, and if used by petitioner for the purpose of temporarily or permanently impounding water, or if used as a part of a reservoir for ponded water, said use would render the remaining portion of the said entire tract undesirable and valueless to respondents, as respondents verily believe and therefore allege, for that said remaining portion would be wholly cut off and rendered inaccessible to advantageous markets, *and because of the foul and impure nature of the water so impounded would be unfit and unhealthy for human habitation.*"

A hearing was had in said proceeding before commissioners, and from their report the clerk rendered judgment on 4 May, 1925; both parties appealed to the Superior Court of Burke County from the judgment. Said cause was tried on appeal at September Term, 1926, before a jury and verdict in said proceeding was rendered in favor of defendants, respondents, plaintiffs in this action.  That at the time of such trial the waters of Hunting Creek and Catawba River had been impounded for a year and were at as high a level as at the time the present action was tried; that in said condemnation proceedings the respondents, defendants therein, and plaintiffs herein, at said September Term, 1926, and before the trial of said proceedings, filed an amendment to their answer, which was allowed by the court, to which no objection was made, as follows: (1) By striking out section 3 in each of the further answers (there were several answers of the individuals of full age and guardian *ad litem* for minors), and inserting in lieu thereof in each of said answers the following words: '3. That the tract or parcel of land which the petitioner seeks to acquire is a valuable part of the entire tract of land belonging to respondents, and is a necessary and indispensable part thereof, and its taking would greatly and irreparably impair the value of the remaining portion of said tract; and if used by petitioner for the purpose of temporarily or permanently impounding water or if used as a part of a reservoir for ponded water said use would render the remaining portion of the said entire tract undesirable and valueless to respondents, as respondents verily believe and therefore allege, for the said remaining portion would be wholly cut off and rendered inaccessible to advantageous markets.'  (2) by inserting in the next to the last line in the second section of the prayers in each of the several answers after the

word 'appear' the following words: '*Exclusive of any damages caused by the polluting of the streams adjacent to and bounding the premises of respondents.*' The condemnation suit was tried on the complaint of the Power Company and the answers of the defendants, as amended, and a jury verdict rendered in favor of defendants, respondents, plaintiffs in this action, for $7,500, upon which judgment was rendered, and said judgment and all costs of court were paid by said Power Company and received and accepted by defendants, respondents, therein, who are plaintiffs in this cause. The issue in the cause submitted to the jury was as follows: 'What damages, if any, are the defendants entitled to recover on account of the condemnation by the petitioner of the rights, privileges and easements described in the petition filed in this cause?' That no appeal was taken from such judgment by any of the parties thereto; that on 10 December, 1925, plaintiffs herein, defendant or respondents in the condemnation proceeding, filed this action and it was pending at the time of the trial and disposition of the condemnation suit. The waters of Hunting Creek and Catawba River as now impounded by the erection of the dam across the Catawba River by the Power Company do not cover all of the 31½ acres described in the condemnation proceedings, and such waters do not cover any other portion of plaintiffs' lands.

The present action, brought on 10 December, 1925, above referred to, was instituted against not only the Western Carolina Power Company, but also the town of Morganton and the International Shoe Company, charging that they were joint *tort-feasors* and alleging damage, the Western Carolina Power Company damming up the Catawba River and the other two defendants polluting Hunting Creek that emptied into the Catawba River above the dam, and the dam stopping the excrement and other deleterious substances put in the stream by the town of Morganton and the International Shoe Company, creating a nuisance and damaging plaintiffs' land. The defendant, International Shoe Company, a nonresident defendant, filed petition for removal to the Federal Court. On appeal to this Court the petition was denied. It was said by this Court in the case on appeal, *Moses v. Morganton,* 192 N. C., at p. 106: "In many cases of this kind it has been held to make parties joint *tort-feasors* there must be a common concert of action, design or purpose. In the instant case this may be shown from the result, sequence and consequences of the independent acts. If parties, although acting independently know, or have reasonable ground to believe, that their independent acts combining with the independent acts of others will create a result that will become a nuisance, and they do so causing damage, they become as it were joint wrongdoers *ab initio,* and are liable as joint *tort-feasors.* Where all have knowledge of the independent acts that

create the result and continue the independent acts with knowledge, this *ipso facto* creates a concert of action and makes a common design or purpose. Any other position, from the facts and circumstances of the case, would make plaintiffs practically remediless, although there is a nuisance which all jointly concurred in and contributed to, that is alleged made the plaintiffs' land valueless, and but for such joinder the injury would not have occurred. The term 'nuisance' means literally annoyance—anything which works hurt, inconvenience or damage or which essentially interferes with the enjoyment of life or property. 29 Cyc. L. & P., 1152." *Cook v. Mebane,* 191 N. C., at p. 6; *Masten et al. v. Texas Co. et al.,* 194 N. C., p. 540.

When the present action came on for trial the court below allowed the defendants to file amended answers. The amendment to answer of the town of Morganton and International Shoe Company is as follows: "That prior to the institution of this action, and after said dam was erected, this defendant's codefendant, the Western Carolina Power Company, instituted a suit in the nature of a condemnation proceeding against all the plaintiffs herein, as defendants, and in which suit they prayed for damages, covering all damages sued for herein, which said suit has been prosecuted to judgment and the plaintiffs herein have been fully paid for all damage, past, present and prospective, for the damming up, ponding or backing up of the waters of the Catawba River and Hunting Creek and all injuries and damages incident thereto, and said proceeding and the final judgment in the same, as appears in the office of the clerk of the Superior Court, is expressly pleaded in estoppel and in bar of any recovery by the plaintiffs in this cause."

The amendment to answer of the Western Carolina Power Company, material part, as follows: "And defendant further alleges by way of estoppel and in bar of plaintiffs' cause of action set out in the complaints and of plaintiffs' right to maintain this action against this defendant upon the grounds asserted in the complaint that heretofore and in said action, wherein this defendant was petitioner and the plaintiffs herein were defendants, and wherein judgment was rendered at the September Term, 1926, wherein this defendant sought to condemn 31(½) acres of the real estate described in the complaint, and to secure by such condemnation the easement, rights and privileges of storing, pounding and backing water upon the said 31(½) acres, a portion of said real estate, owned by the plaintiffs herein, by the construction of defendant's dam across the Catawba River; that in said suit the plaintiffs herein as defendants in said action set up and sought to recover therein of this defendant of the value of the land so taken, asserted and set up the depreciation in the value of the remainder of said farm which would be occasioned by the erection and construction of said dam and as one

basis of such damage set up and asserted in said action the same element of damage as is now set up and asserted in the causes of action sued on herein and for which they now ask damages, to wit, the damage caused by the impounding and storage of the waters of Hunting Creek and the deposit of the effluent by the defendant, the International Shoe Company, and their tannery, and the sewage of the town of Morganton; that such matters were matters to be determined in that case."

The Western Carolina Power Company further alleged that the dam had been erected and the water backed and impounded with the pollution, if pollution at all (which was denied), for more than a year before the trial of the condemnation proceeding, "and were essential elements of damages in ascertaining what damages, if any, the said plaintiffs were entitled to recover by reason of the taking of the said lands sought to be taken and condemned therein, and are conclusively presumed to have been taken into consideration by the court and jury in assessing the damages sustained by the plaintiffs herein, who are defendants in said action, or should have been taken into consideration in arriving at and ascertaining said damages, and this defendant therefore sets up, asserts and pleads the said action and proceeding and the judgment and decree rendered therein as an estoppel upon the plaintiff and in bar of the plaintiffs' right to maintain this action against the defendant, or to recover any damages of this defendant by reason of the ponding back of the waters of Hunting Creek upon the lands of the plaintiffs."

The plaintiffs in the present action, by leave of the court, filed replications to defendants', town of Morganton and International Shoe Company, amended answers, denying the facts alleged in that the amended answer "fails to state facts sufficient to constitute a defense," etc.

The plaintiffs, by leave of court, in answer to the material parts of the amended answer of the Western Carolina Power Company, as above set forth, alleged that the condemnation suit referred to, "Was tried and settled by the court and a jury, as admitted . . . upon the question of the value of the easement in the lands of these plaintiffs required for the lawful purposes of the Western Carolina Power Company, as set out in said judgment, and in addition thereto the damage to the remaining portions of the lands of these plaintiffs, caused by the lawful appropriation and use of their property over which such easement was acquired; *that in the estimation of the amount of said value and damage the question of the unlawful use of any part of plaintiffs' said property by the said Power Company and any damages caused thereto or to plaintiffs themselves by the maintenance thereon of a nuisance arising from the damming or ponding of polluted water and the pollution of the same by the joint or several acts of all the defendants herein were withdrawn from the consideration of the jury as being pertinent to the inquiry in*

7—195

*such condemnation suit or as affecting the amount of damages which
they should award to the plaintiffs by their verdict.* . . . In the
trial of said condemnation suit no evidence was offered or procured by
the respondents therein, the present plaintiffs, or by their counsel relat-
ing to any pollution of either the Catawba River or Hunting Creek by
any of the defendants or the damming up in either of said streams by
the said Power Company of foul, polluted or contaminated water, and
that neither in the examination of witnesses nor in the addresses of
counsel to the court or jury was any mention or reference made to or of
any smells, odors, filth or contamination produced on or near the prem-
ises of the respondents in said action or of any wrongful or unlawful
acts of either of the defendants in this suit producing or tending to pro-
duce a nuisance in said stream on or near the premises of these plain-
tiffs. . . . And plaintiffs, as a further reply to the matters and
things attempted to be set up by said amendment, allege *that the only
right the defendant, Western Carolina Power Company, acquired under
its said easement was and is to pond water of the ordinary kind and
character of streams in their natural state,* whereas the water which has
been dammed up and backed by the said defendant on the said premises
as set out in the complaint is filled with putrid and refuse matter, sew-
age and other contaminating foreign substances resulting in the action-
able and dangerous nuisance on or near the premises of the plaintiffs as
set forth in their complaint."

We think the other part of the answer of plaintiffs to the amended
answer, which the court below refused to allow plaintiffs to file, not
material, but giving the *answer as filed* more specific particulars.

The court below "after hearing the agreement of all parties as to the
facts, for the purposes of the pleas of *res judicata* and estoppel, and
argument of counsel, announced to counsel that he would hold that the
judgment in the condemnation suit was *res judicata* as to the cause of
action set up by the plaintiffs against the defendant, Western Carolina
Power Company, and that by such judgment the plaintiffs were estopped
from setting up their cause of action as alleged against the Western
Carolina Power Company, in that they had obtained a judgment in
such condemnation suit for all damages incident to the erection and
construction of such dam; that the Western Carolina Power Company
being a joint *tort-feasor* with the International Shoe Company, and the
town of Morganton, and the judgment having been paid, that he would
therefore instruct the jury that plaintiff could not recover against either
of the three defendants; and thereupon counsel for plaintiffs, in defer-
ence to the ruling and intimation of the court, submitted to judgment as
of nonsuit and excepted and appealed to the Supreme Court."

In the finding of fact by the court below the condemnation proceeding
was *tried out on the theory of damage, "exclusive of any damage caused*

*by the polluting of the streams adjacent to and bounding the premises
of respondents," plaintiffs in this action.*

The question for determination: "Are the plaintiffs herein estopped
or their cause of action rendered *res judicata* as against the defendant,
Western Carolina Power Company, by the proceedings and the judg-
ment in the condemnation proceeding brought by said defendant as peti-
tioner against the plaintiffs herein, as respondents, tried at the Septem-
ber Term, 1926, of Burke Superior Court? Does the payment of the
judgment by the Western Carolina Power Company in said condemna-
tion proceeding release its joint *tort-feasors,* the defendants, town of
Morganton and International Shoe Company, from the cause of action
set up in the present complaint?" We think not.

The principle of law applicable in regard to condemnation proceed-
ings is stated in *Power Co. v. Hayes,* 193 N. C., at p. 107, as follows:
"Authoritative decisions of this and other courts are to the effect that
the owner of land, a part of which is taken under the right of eminent
domain, may recover as compensation not only the value of the land
taken, but also the damages thereby caused, if any, to the remaining
land. *R. R. v. Land Co.,* 137 N. C., 330, 68 L. R. A., 333; *United
States v. Grizzard,* 219 U. S., 180, 55 L. Ed., 165. In the opinion in
the last cited case *Lurton, J.,* says: 'Whenever there has been an actual
physical taking of a part of a distinct tract of land, the compensation to
be awarded includes not only the market value of that part of the tract
appropriated, but the damage to the remainder resulting from that tak-
ing, embracing, of course, the injury due to the use to which the part
appropriated is to be devoted.' " *R. R. v. Mfg. Co.,* 169 N. C., p. 156.

The principle of damages is laid down thus in 10 R. C. L., part
sec. 112: "When a parcel of land is taken by eminent domain, the meas-
ure of compensation to be awarded the owner is the price which would
be agreed upon at a voluntary sale between an owner willing to sell and
a purchaser willing to buy—in other words the test is the fair market
value of the land."

The present action against all the defendants is for a tort, an action-
able nuisance, causing damage to plaintiffs. By consent this phase of
damages could have been tried in the condemnation proceeding, but with
leave of court and without objection by the Western Carolina Power
Company, it was withdrawn from the jury. See *Langley v. Hosiery
Mills,* 194 N. C., 644.

It is said in *Shipp v. Stage Lines,* 192 N. C., p. 478: "A party is not
permitted to try his case in the Superior Court on one theory and then
ask the Supreme Court to hear it on another and different theory. *War-
ren v. Susman,* 168 N. C., 457." *Booth v. Hairston,* 193 N. C., at p. 281.

"It is well settled that no damages are contemplated in the original
condemnation, except such as *necessarily* arise in the *proper* construc-

tion of the work. Any other rule would be contrary to public policy as well as private right, and could never receive the sanction of the courts." *Mullen v. Canal Co.,* 130 N. C., at p. 503.

In *Towaliga Falls Power Co. v. Sims,* 6 Ga., 749, 65 S. E., at p. 847, it is said: "Indeed, it is never to be presumed that the law intended to authorize the operation of a thing which would seriously endanger the health and lives of its citizens. This is sometimes expressed, somewhat inaptly perhaps, by the statement that the law never authorizes a nuisance. . . . Generally upon the subject of legalizing nuisances, see Wood on Nuisance, ch. 23."

In *Regina v. Bradford Nav. Co.,* 6 B. & S., 631, "it appeared that when the canal was built, and down to within three or four years before the commencement of the action, the water of Bradford beck had been pure, and that the impurity arose from leading into the beck the sewage from the town of Bradford, which, within a few years, had largely increased in population, so that, although the water was impure, no deposit of an offensive kind took place. The water in the canal was stagnant, and there was no current or flow of water, and the sewage was deposited in the canal, so that when boats passed through it, it emitted very offensive smells and gases. The court held that although the company was authorized by Parliament to construct the canal, and feed it with the water from Bradford beck, yet, as at that time the water was clear and pure, it could not be held as having been contemplated by Parliament that the water would become so impure as to make its use in the canal a public nuisance, and the use of the water was enjoined, as well as a use of the canal in any way so as to create a public nuisance by reason of noxious smells emitted from the water used therein." 2 Wood on Nuisances, 3d ed., p. 1047, note 2.

1 Lewis Eminent Domain, sec. 77 (65), p. 81, in part, says: "The general right to the flow of a stream in its natural purity is fully established by the decisions. The upper proprietor may, of course, make a reasonable use of the stream or of his land, though the stream is to some extent polluted thereby. This right to pure water is property, and any interference with the right is a taking, to the extent of such interference. It necessarily follows that a stream may not be polluted for private purposes against the will of the riparian owner, with or without compensation; also that it cannot be polluted for public purposes, except under authority of the law, and upon compensation." *Cook v. Mebane, supra.*

In *Teeter v. Tel. Co.,* 172 N. C., 785, it is said: "It is not denied by defendant that the telegraph line superimposed upon a railroad right of way is an additional burden which entitled the owner to compensation.

*Hodges v. Tel. Co.,* 133 N. C., 225; *Phillips v. Tel. Co.,* 130 N. C., 513." *Rouse v. Kinston,* 188 N. C., at p. 11.

Joyce, Law of Nuisances, latter part section 427 and first part section 428, is as follows: "But where the alleged nuisance would constitute a private wrong by injuring property or health, or creating personal inconvenience and annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance. . . . The circumstance that many other property owners residing in the vicinity have also sustained special damages will not make the nuisance any less a private nuisance." *Farmers' Coöp. Mfg. Co. v. R. R.,* 117 N. C., 579, 23 S. E., 43; 29 L. R. A., 700.

"A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal. *Harrington v. Rawls,* 136 N. C., 65." *Strunks v. R. R.,* 188 N. C., at p. 568.

The decision of *Moses v. Morganton, supra,* is the law of the case. The question of nuisance was withdrawn from the consideration of the jury in condemnation proceeding by permission of the court, and without objection on the part of the Western Carolina Power Company. This nuisance element was eliminated and not considered in the verdict rendered in the condemnation proceeding. No compensation has been made for this additional burden. Under the facts and circumstances of this case, the judgment was no estoppel or *res judicata* as to the action for actionable tort for nuisance causing damage to plaintiffs against the Western Carolina Power Company, and it follows no estoppel or *res judicata* as to the other defendants. See *Braswell v. Morrow, post,* 127; *Taylor v. Construction Co., ante,* 30.

In 23 Cyc., at p. 1304 (III), it is said: "The great preponderance of authority sustains the rule that the estoppel of the judgment covers all points which were actually litigated and which actually determined the verdict or finding, whether or not they were technically in issue on the face of the pleadings. But a matter is not in issue in the suit which was neither pleaded nor brought into contest therein, although within the general scope of the litigation, and although it might have determined the judgment if it had been set up and tried." *Hardison v. Everett,* 192 N. C., 371; *R. R. v. Story,* 193 N. C., 362; *Crump v. Love,* 193 N. C., 464.

For the reasons given, the judgment in the court below is

Reversed.