ARKANSAS-MISSOURI POWER COMPANY, A CORPORATION, APPELLANT, v. H. A. KILLIAN ET AL. AND GEORGE W. RONE, EXCEPTOR, RESPONDENT.—40 S. W. (2d) 730.

In the Springfield Court of Appeals. Opinion filed July 3, 1931.

*Ward & Reeves* for appellant.

*Gallivan & Finch* for respondent.

COX, P. J.—This is a condemnation proceeding. The appellant sought to condemn a right of way across 160 acres of land belonging

to respondent, George W. Rone, for the purpose of erecting poles on which wires were strung for the purpose of conveying electric current. Commissioners were appointed by the circuit court to assess Mr. Rone's damages, and they awarded him $198. This sum was paid by appellant. Respondent Rone filed exceptions to the report of the Commissioners and a trial by jury followed resulting in his damages being assessed by the jury at $300. The $198 already paid was deducted and judgment rendered against appellant for the difference of $102. This appeal followed.

After the Commissioners' report was filed, the appellant paid the $198 assessed as damages by the Commissioners and then proceeded to erect its poles and wires and establish it power line over respondent's land so that at the time the exceptions of respondent were heard before the jury, the power line was fully established.

The errors in the trial relied upon here are that incompetent testimony was admitted and erroneous instructions given to the jury. The land of respondent was partly pasture and partly cultivated land. The power line ran across about fourteen acres of land in wheat. Part of this wheat was destroyed by poles being dragged over it and evidence as to the amount of damage done thereby to the wheat crop was admitted without objection. The evidence also tended to prove that the fence enclosing the pasture was cut and stock confined in the pasture escaped therefrom and the owner was required to gather them together and keep them confined in another place for a week. This evidence was objected to on the ground that recovery of damages resulting from negligence or trespass in erecting the power line could not be recovered in a condemnation proceeding but the remedy of respondent, if he had one, was by a common-law action for damages. To sustain that position we are cited to 20 C. J. section 233, page 778; R. R. v. Blechle, 234 Mo. 471, 479, 137 S. W. 974; Missouri Power & Light Co. v. Creed (Mo. App.), 32 S. W. (2d) 783.

The Missouri cases are not, to our mind, conclusive on the question though their tendency is rather strong in that direction. The text in Corpus Juris is very strong on this question. Appellant has copied that in its brief and we reproduce it here as follows:

"In proceedings to condemn land or to recover compensation for land already taken or injured, no damages are included except such as necessarily arise from a lawful taking and a proper construction and operation of the improvement. Anticipated or past negligence in the construction of the improvement is not, therefore, an element of damage, and the same is true where the completed improvement is maintained and operated in a negligent manner or so as to constitute a nuisance. So in such a proceeding there can be no recovery for an original wrongful entry, nor for trespasses

committed in constructing the improvement. The remedy of the landowner in such cases is a common-law action for damages. The rules stated in this section are strictly applicable, although the constitution provides that compensation shall be made for injuring or destroying property as well as for taking it, and they also apply under statutes providing not only that just compensation for the land taken shall be made but likewise for incidental loss or damage such as must necessarily or reasonably result from the appropriation of the land and the construction of the road.''

The measure of damages in condemnation proceedings is the difference in value of the whole tract of land over which the right of way passes immediately before and after the right of way is secured and the contemplated structure erected thereon. In cases where a strip of land of a certain width is condemned and the absolute use of that strip goes to the condemnor and in the erection of his structure thereon, he is not permitted to trespass upon the remainder of the land but must confine himself to the strip of land condemned, the measure of damages is clearly the difference in value of the whole tract before and after the taking of the strip by the condemnor. That is also the general rule to be followed in a case of this kind where the condemnation is not confined to a strip of land of a described width but merely allows the erection of poles and wires and does not take from the owner but little of the land where poles and braces stand and permits the owner the full use of the land, with the small exception mentioned, omitted. In the erection of this power line it was necessary to cut fences enclosing this land and make openings in the fences for the purpose of taking the poles and wire upon the land and putting them in place. If in doing this work the employees of appellant did not properly guard the openings made in the fence or did not properly repair the fence after the work was completed and by reason thereof stock confined on the land by the fence was allowed to escape and that caused damage to the owner of the land, the appellant would be liable therefor and under the general policy of the law in this State to avoid a multiplicity of suits, we can see no reason why the whole matter could not be determined in one hearing, when, as here, the work of placing the power line is completed before the exceptions are heard, if the pleadings should warrant ·that procedure. Under our law, if the landowner be dissatisfied with the damages allowed by the Commissioners, he can file exceptions thereto and demand a jury trial on the question of the amount of his damages. That, of course, must be done promptly and in the ordinary course nothing could be done by the condemnor until after the Commissioners had reported and the amount allowed by them had been paid, so that the work of erecting the line in the course of which the fence would be cut and live stock be permitted to escape would not have occurred at the time the exceptions to the

Commissoners' report were filed and could not be included in the exceptions for that reason; but if the hearing on the exceptions is delayed until after the condemnor has paid the amount assessed by the Commissioners and has erected the power line and damages of the character under consideration here has accrued to the landowner and he should, before the hearing, file a claim therefor in a separate count and ask recovery therefor so that the condemnor would have notice of the claim and be given an opportunity to prepare to defend against it, we can see no reason why it might not be done. No additional claim was filed in this case and for that reason, as we view it, the evidence as to the escape of live stock from the pasture should have been excluded.

Other evidence tended to show damage to a growing wheat crop and failure to repair cuts made in the fence was properly admitted for if the owner of the land had sought to sell it immediately after the power line was erected the fact that his wheat crop was partially destroyed and his fences injured would, to some extent, lessen the value of his farm.

Something was said about the fence being cut at a place where it was unnecessary to cut it. Appellant takes the position that if that were done, it was a trespass outside of the necessary and proper performance of the work and hence could not be considered in this proceeding. If appellant cut the fence in the performance of the work of erecting the power line, it should not now be heard to say that it was unnecessary and thus profit by its own wrong in this action and force the exceptor to bring another suit to recover for such damage. Appellant should be required to answer in this proceeding for everything done which would to any extent reduce the value of the land of the exceptor.

Other evidence tended to show that the wires on this line carried a heavy voltage of electricity and such voltage was dangerous to handle. This was clearly inadmissible. There was no evidence that the owner of this land would ever be required to handle this wire or that it was likely to break and fall, or if it did, that the landowner would, at that particular time, be where he could be injured or that his live stock could be injured. That would be speculating on the possibilities of the future which cannot reasonably be expected to occur.

We think the instructions given to the jury were erroneous. In a condemnation proceeding, the measure of damages, as we have already said, is the difference in value of the entire tract of land immediately before and after the condemnation, and the jury should be so informed by an instruction that is plain and easily understood. Without setting out these instructions, we merely state that we do not think they comply with the rule just stated. [City Water Co. v.

Hunter, 319 Mo. 1240, 1245, 6 S. W. (2d) 565; North Nishnabotna Drain. District v. Morgan, 323 Mo. 1, 6, 9 S. W. (2d) 967.]

In the admission of evidence, the one issue as to injury to the value of the whole tract of land should be kept in view and then that question plainly submitted to the jury by instructions easily understood.

For the errors noted, the judgment will be reversed and the cause remanded. *Bailey* and *Smith, JJ.,* concur.