STATE ex rel. CITY OF ARDMORE et al. v. WINTERS et ux.

No. 31568.    Feb. 6, 1945.

Rehearing Denied March 20, 1945.

*156 P. 2d 798.*

J. B. Moore, of Ardmore, for plaintiffs in error.

Andrew B. Riddle and Stephen A. George, of Ardmore, for defendants in error J. M. Winters and Myrtle Winters.

HURST, V.C.J. The city of Ardmore appeals from a judgment, based on a jury verdict, awarding damages to J. M. Winters and wife in a condemnation proceeding instituted by the city for the purpose of acquiring title to 16 separate tracts of land, aggregating 1,426.56 acres, for the purpose of "establishing, equipping and maintaining" an airport. The proceedings were instituted May 29, 1942, and the city took possession of the land soon thereafter. Mr. and Mrs. Winters owned tract No. 15, consisting of 80 acres, the south half of a 160-acre tract a mile long and a quarter of a mile wide owned by them. The appraisers assessed their damages at $5,500, of which $5,200 was for the value of the land taken and $300 was for the value of the crops growing thereon. The appraisers assessed no sum for depreciation in the value of the north 80 acres not taken. The owners filed a demand for a jury trial on the question of the amount of damages sustained by them. The cause was tried before a jury on April 6, 1943, resulting in a verdict for $7,800, of which $6,000 was for the value of the land taken and $1,800 was for depreciation in the value of the land not taken. From a judgment entered on the verdict, the city appeals.

On August 15, 1942, the city entered into a written contract with the United States Government whereby it leased the land so acquired to the Government, at a rental of $1 per year, for a period of one year, for use as a military reservation and air base for the army air forces, with the option on the part of the Government to renew the lease from year to year until June 30, 1967, and with the further option on the part of the Government to purchase the land during the term of the lease or any renewal thereof for a consideration of $100,000. The Government acquired title to some 650 acres of land in its own right adjacent to the land acquired by the city, and the two tracts, consisting of some 2,076.56 acres, were developed and used as one airport by the Government, as authorized by the lease, and it was in operation at the time of the trial.

Several witnesses for the defendants testified that the fair ·market value of the 80 acres taken at the time it was taken was from $75 to $80 per acre, and that the fair market value of the 80 acres not taken at the time the other 80 acres was taken was from $65 to $70 per acre and that it had depreciated in value from 50 to 60 per cent by reason of the taking of the 80 acres and the construction and operation of the airport. The witnesses for the city testified that the fair market value of the land taken at the time it was taken was from $50 to $70 per acre, and that the 80 acres not taken depreciated in value $10 per acre by reason of the taking of the other 80 acres and the construction of the airport.

The right of the city to acquire title to the land for said purposes by condemnation proceedings is not questioned. The city, in its petition in error, makes eight assignments of error to the effect that incompetent evidence was admitted and that the court improperly instructed the jury, resulting in a verdict awarding excessive damages.

1. The city argues that prejudicial error was committed in permitting Mrs. Winters to testify that they could have sold their farm for $75 per acre. It cites Sharp v. United States, 191 U.S. 341, 48 L. Ed. 211, 24 S. Ct. 114, Wiget v. Becker (8th Cir. Ct.) 84 Fed. 2d 706, and Hine v. Manhattan, 132 N.Y. 477, 30 N.E. 985. We are committed to the rule that the range of inquiry as to value permitted in a condemnation proceeding rests largely in the discretion of the trial court. City of Tulsa v. Horwitz, 131 Okla. 63, 267 P. 852. But, assuming, without deciding, that such evidence

was not admissible, yet other witnesses testified that the fair market value of the land taken was from $75 to $80 per acre, and the verdict is supported by competent evidence, and we cannot say that the admission of such evidence resulted prejudicially to, the city. Oklahoma Natural Gas Co. v. Coppedge, 110 Okla. 261, 237 P. 592; 12 O.S. 1941 §§ 78, 636; 22 O.S. 1941 § 1068.

2. The trial court admitted evidence that the roads serving the 80 acres not taken were not as good as those serving the farm before the south 80 was taken and that the rural mail box was less accessible, and that drinking water was more difficult to obtain. The city argues that this evidence was not admissible, and cites A. S. McKay v. City of Enid, 26 Okla. 275, 109 P. 520, 30 L.R.A. (N.S.) 1021, and Oldfield v. City of Tulsa, 170 Okla. 329, 41 P. 2d 71. These were actions for damages caused by the closing or obstruction of streets, and stand for the proposition that before a property owner can recover damages in such a case he must show that he has suffered damage to his property different in kind and not merely in degree from the general public. We are not able to say from the record whether the evidence comes within this rule. The city does not point out where it does. This evidence had a bearing only on the consequential damages to the 80 acres not taken, and other competent evidence fully supports the verdict for that item of damage. The error, if any, was harmless and will not justify a reversal. See authorities above.

3. The city contends that the trial court committed reversible error in permitting Mrs. Winters and other witnesses to testify that one of the runways ends near her home on the 80 acres not taken and that airplanes are constantly taking off and landing near her home and that they fly near the ground and make loud noises, thus disturbing their sleep and impairing the value of the 80 acres not taken. The city contends that it is not liable for anything done by the Government after it took possession of the land in the summer of 1942. It cites no authority that supports this contention. Here, the city is the condemnor. It is liable for the fair cash market value of the land taken at the time it was taken, and for such depreciation in the market value of the land not taken as might reasonably be anticipated to result from the proper construction and operation of the project for which the land was condemned. St. Louis, E. R. & W. Ry. Co. v. Oliver, 17 Okla. 589, 87 P. 423; Oklahoma Gas & Elec. Co. v. Kelly, 177 Okla. 206, 58 P. 2d 328; State v. Adams, 187 Okla. 673, 105 P. 2d 416. No contention is made that the Government did not properly construct and operate the airport, and the question as to whether the city would be liable for damages caused by the negligence of the Government in constructing and operating the airport is not before us. Therefore the cases cited by the parties dealing with tort liability are not helpful in the present case. The correct rule, where one condemns the land and another, with the condemnor's consent, appropriates the land or builds the project, as in the instant case, is stated in 20 C.J. at page 845 and 29 C.J.S. at page 1095, as follows:

"The person or corporation causing the land to be condemned or the work to be done is primarily liable for injuries caused by the exercise of the power of eminent domain, although the work or taking is actually done by another, and this applies to property taken or injured by a county, city or other political subdivision."

Here, the airport was already built and in operation at the time of the trial, and it was proper to permit the witnesses to testify as to the facts then existing. Incorporated Town of Sallisaw v. Priest, 61 Okla. 9, 159 P. 1093; 20 C.J. 831; 29 C.J.S. 1072.

4. The city complains of that part of instruction No. 4 wherein the jury was advised that "in arriving at a fair cash market value of the land taken you should also consider the value of all improvements taken or destroyed, and the value of growing crops thereon, if any."

The city cites no authority in support of this proposition. While it is true that the measure of damages for land taken is the fair cash market value at the time it is taken, as the jury was instructed in instructions No. 3 and No. 4 (see authorities above), it is proper for the jury to consider all elements that have a bearing on the market value, including the nature and extent of the improvements and the condition of the growing crops. City of Tulsa v. Lloyd, 129 Okla. 27, 263 P. 152. This instruction cannot, as urged by the city, be construed as meaning that the jury should allow for the value of the improvements and crops separate and apart from, and in addition to, the market value of the land as a whole. Furthermore, the instruction relates to the measure of damages, and, since the verdict is not excessive and the city requested no instruction on the measure of damages, the city is not in position to complain of the instruction. Eagle-Picher Mining & Smelting Co. v. Drinkwine, 192 Okla. 662, 141 P. 2d 66.

5.   Finally it is urged that the verdict is excessive, but, under the evidence as above outlined, we find no merit in this contention.

We conclude that no reversible error was committed as urged by the city.

Judgment affirmed.

GIBSON, C.J., and RILEY, OSBORN, CORN, and ARNOLD, JJ., concur. WELCH and DAVISON, JJ., dissent.

WELCH, J. (dissenting).   The effect of the decision is to award money damages to this landowner for the appearance over his land of Army airplanes and for the noises emanating therefrom. The airplanes are used by the Government in the present war. And such so-called land damage is awarded against the taxpayers of the City of Ardmore. I respectfully, but insistently, dissent.

It is true that not all of the damage awarded is of that character, but the above is the effect of the decision on that point by approving the admission of evidence upon the items of damage above set out.

The opinion points out that the city is lessor of a portion of the grounds upon which the Government constructed and now operates its airport, but even so, I find no applicable rule which would tax against the citizens of Ardmore a damage, if there was any in fact, caused by our Government in the operation of airplanes in the war effort.