**C. C. HOLT, Appellant,**

v.

**CITY OF SAN MARCOS, Appellee.**

No. 10374.

Court of Civil Appeals of Texas.

Austin.

March 21, 1956.

Rehearing Denied April 11, 1956.

Tisinger & Sloan, Austin, for appellant.

Tom G. Oliver, Jr., Ernest Morgan, San Marcos, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment of the District Court entered upon a jury verdict in favor of appellee, growing out of a suit filed by appellant against appellee alleging that appellant's land had been taken or·damaged as a result of water or effluent being discharged into the Blanco River about.one fourth mile northwest of appellant's property, and which flows down the river onto appellant's land where it collects and stands in large holes and after evaporation flows on across appellant's property for a distance of one half mile. Allegation was further made that a large percent of the solid matter in the effluent settles out on appellant's property, inundating 2½ acres and infiltrating 10½ acres, and that the· remaining 50 acres of appellant's land are damaged by the proximity of such wastes and nauseous odors therefrom.

The appeal is before this Court on eighteen points and are: that the court erred in failing to grant a new trial because the jury finding is repugnant to the undisputed fact that appellee had committed a trespass on appellant's land; because appellant's land was damaged as a matter of law and was entitled at least to a minimum damage; because the jury finding that the disposal operation caused no objectionable matter upon appellant's land is not supported by the evidence; because the jury's finding that the disposal operation does not constitute a nuisance is not supported by the evidence; because the finding of the jury that no depreciation in the market value of appellant's land is not supported by the evidence; because the jury's finding that the value of appellant's land was greater immediately after the completion of the project than prior thereto as not being supported .by the evidence; because of unauthorized communications to the jury, misconduct on the part of jurors, witnesses and counsel for appellee during the trial and during the deliberations of the jury; improper argument of counsel, in appealing to the passion and prejudice of the jury; in admitting appellee's Exhibit No. 51, a card listing; in admitting questions Nos. 50 and 51 and an-

swers thereto from the deposition of E. S. Sutton with respect to his opinion of the value of appellant's property; in admitting the testimony of Milton Jowers to the effect that he made an offer to buy appellant's property, and with reference to whether or not he could have secured a loan satisfactory to him.

At the outset it is to be noted that we are dealing with an extremely large record, the transcript contains 177 pages, the statement of facts on the trial has over 2,100 pages with many exhibits, and the record on the hearing for a new trial has 300 pages.

We have been favored with well prepared briefs and shall attempt to state our view on the assignments presented without unduly lengthening the opinion, taking into consideration the size of the record as a whole.

The trial was had with the aid of a jury.

There were submitted the following issues and the jury's answers thereto:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the sewage disposal operation has caused objectionable matter to come upon plaintiff's land?

"Answer 'Yes' or 'No'.

"Answer. No.

"Special Issue No. 2. Do you find from a preponderance of the evidence that the sewage disposal operation constitutes a nuisance with respect to the plaintiff?

"Answer 'Yes' or 'No'.

"Answer. No.

"Special Issue No. 3. Do you find from a preponderance of the evidence that such objectionable matter, if any, or such nuisance, if any, or both, if any, have caused a depreciation in the market value, of plaintiff's land?

"Answer 'Yes' or 'No'.

"Answer. No.

"Special Issue No. 4. From a preponderance of the evidence, what do you find to have been the reasonable market value of plaintiff's 64.97 acres involved in this lawsuit immediately prior to the beginning of such depreciation in value, if any?

"In answering the above and foregoing issue, you are instructed that by the term 'market value' as used in this charge is meant the price which the property would bring when offered (if) it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable, or for which it either is or in all probability will become available within the reasonable future.

"You are further instructed that by the term '64.97 acres' as used in the above and foregoing special issue, is meant to include the land, the houses, and all improvements thereon.

"Answer this issue in dollars and cents, if any.

"Answer. $35,805.00.

"Special Issue No. 5. What do you find from a preponderance of the evidence was the reasonable market value of plaintiff's land, if any, immediately after the completion of such depreciation, if any, in value, if any?

"Answer in dollars and cents, if any.

"Answer. $39,400.00."

No objection was made to the charge as a whole, or to the issues and no other issues requested by appellant.

The first assignment is directed to the jury finding of no damage because it is repugnant to the undisputed facts and damages resulted as a matter of law.

The boundaries of appellant's land are shown by plaintiff's Exhibit No. 4 and reflects that some of it is in the bed of Blanco

River. Appellant contends that 2½ acres are actually submerged by and 10½ acres are infiltrated with sewage effluent.

The water or effluent is discharged into the river at a point a few hundred yards north of the northwest corner of appellant's property, being deposited by an outfall pipe 12 inches in diameter from appellee's sewage plant at the rate of one half to one million gallons per day.

Testimony was given by appellant as to the value of the property prior to the discharge of the water or effluent and immediately thereafter.

The second assignment is that the court erred in refusing to grant appellant's motion for judgment non obstante veredicto because appellant was damaged as a matter of law and that a minimum was fixed.

The pleadings of appellant were in part:

"* * * that said sewer effluent so discharged into the Blanco River and thence cast upon plaintiff's land consists of the remaining residue after passing through the sewer plant of the water, fecal, urine, matter, domestic and commercial refuse, and other forms of sewage, collected by defendant through its system of sewer lines within the city of San Marcos, and transported by defendant to said point of discharge, all of which sewage contents are foreign to and constitute no part of the natural drainage of lands into the said Blanco River; that said sewage effluent so discharged into the Blanco River by defendant has covered, occupied, permeated and percolated into and upon plaintiff's said land to the extent of ten acres, more or less, and whereby plaintiff says that defendant has taken plaintiff's said land for the purpose of sewage disposal and dispersion and deprived plaintiff of his use and enjoyment of said land, without plaintiff's consent and without having compensated plaintiff, all in violation of the constitution of the State of Texas; * *"

Further allegations were:

"* * * that by reason of the permeation and percolation of such sewage effluent into and under plaintiff's said land the underground water underlying plaintiff's said land has been contaminated and will continue to be contaminated thereby, and whereby plaintiff has been and will continue to be deprived of the use of his well and water supply, and thereby a health hazard is created for plaintiff and any other persons desiring to use such underground water supply for residential purposes; that plaintiff's said residence, together with the appurtenances thereto and one acre of land set aside therefor, had a reasonable cash market value of $25,-000.00 immediately prior to the creation of such conditions by the defendant, and that after the creation of such conditions by defendant said residence together with the appurtenances thereto and one acre of land set aside therefor had and has a reasonable cash market value of $20,000.00, whereby plaintiff has been damaged in the amount of $5,-000.00; and that the said remaining 53.-97 acres of land owned by plaintiff immediately prior to the creation of such nuisance conditions by defendant had a reasonable cash market value for uses to which it was adaptable of $950 per acre and immediately after the creation of such conditions by defendant said 53.97 acres had a reasonable cash market value of $200 per acre, * * *"

And further:

"* * * that the taking of said ten acres of plaintiff's land, more or less, for sewage disposal and dispersion is a permanent taking by the defendant and that the damage to plaintiff's remaining land is permanent; * * *"

and plaintiff sought damages to his property as a result of defendant's illegal and unauthorized taking and use of his land.

No issue was submitted and none was requested by appellant as to whether any of

his property has been taken, but only issues as to damages were submitted.

We do not believe that the court was in error in refusing to grant a new trial as requested by appellant, or in refusing a judgment to appellant notwithstanding the verdict of the jury.

The City of San Marcos is a municipal corporation, operating under the general laws of Texas, and it has grown in size and the existing sewer plant became inadequate.

The City employed an engineering firm to advise it in connection with the construction of a new plant. This plant is located on a 30-acre tract about one mile east of the San Marcos River, but much nearer the Blanco River. The new disposal plant was put in operation in the latter part of 1951 or early in 1952 and subsequent to its approval by the State Health Department.

We believe that the findings of the jury in its answers to the special issues are reasonably supported by the record. The testimony is extensive and we will only review the evidence in as brief manner as will, in our opinion, justify the action of the jury and the court in overruling the motion for new trial and in entering judgment on the verdict of the jury.

The plaintiff offered testimony as to the location of his land with reference to the outlet pipe, the river and its uses, the uses to which the land was susceptible for subdivision and for a home and farm, and its proximity to other urban developments, and to roads and highways. A map of the property with a proposed subdivision was tendered in evidence which gave the positions of water holes in the river, the acreage actually covered and damaged by infiltration, the presence of growth and vegetation covered by scum and odor one would not like, given by Mr. Breeze, the County Surveyor, who in cross-examination admitted he had a similar lawsuit pending against the City. No utilities were installed on the proposed subdivision and no effort was made to secure the approval of the City Council or the Commissioners' Court for the plan of subdivision. The witness testified that for a period in 1952 he operated the plant.

John Lundy, called by the plaintiff, testified concerning the location of the Holt property with reference to the river and highway and the sewer plant, and objectionable odors from the discharge of effluent. Further testimony was given by the witness as to the condition of the water and water holes in the river, and as to the drought conditions existing in 1953 and 1954.

Mrs. Lundy, called by the plaintiff, testified concerning the purchase and improvement of her home, and that the river was beautiful and clear, and that she fished in the stream; that in 1953 the river began to get dirty and nasty, and they could not fish any more; that there was scum on the water and the odor was terrible and stinks.

Mr. Hohenberg, called by plaintiff, testified that he knew Mr. Holt and where he lived and that the witness had lived on the Blanco River for many years and that it was a nice clear stream, with good fishing and swimming; that at present the river is foul and smells strong and is covered with scum an inch thick; that his Mother recently had sold Mr. Holt some land on the river; that the river would dry into holes in dry seasons.

Auvel Adcock testified that he lived on Highway 81 northeast of town and west of the sewer plant; that the condition of the river had changed considerably lately; that the stench of the plant was very bad but had been improved recently but is offensive now; that the river is full of moss and in bad condition; that Mr. Holt has a little more water than in prior dry years. The witness as a builder talked with Mr. Holt about building 12 houses on his land but loans could not be secured; that he was familiar with the river and its bed and water flow; that it drys up into holes. The witness testified that Mr. Holt told him that he could get private financing. Further testimony was given as to odors from the water in the river.

Jac L. Gubbels, called by plaintiff, testified that he made his living in analyzing land and of his experience covering a long period in planning cities, playgrounds, parks and highways and in keeping up with the cost of ground around cities; that he was employed to analyze values of properties around Mr. Holt's place; and of his investigation of all features and factors entering into values; that the reasonable value of 53 acres of the Holt property was $51,000. On cross-examination the witness testified that it would cost $106,000 to subdivide the property and as to the average cost of each lot in such process, and the prospected sale price of lots, together with estimated profits.

Harry Montandon, called by plaintiff, testified that he was in the real estate business in Austin, Texas, and familiar with the Holt property and acquainted with Mr. Holt and had the property listed for sale in February, 1953 at $45,000, which price was lowered in July, 1953 to $35,000; that the odor on the river was bad, stagnant with a slick scum in July, 1953; that he did not sell the property but fixed a value of $55,000 if there had been no odor, and worth as it is $16,000; that property generally has increased in value over the years; that the value of the property had decreased from $550 per acre to $50 on account of the sewage.

On cross-examination the witness testified that he advertised the property in July, 1953 as a 65 acre dream place on beautiful Blanco River, a fisherman's paradise, etc.

F. W. Beard, called by plaintiff, testified that he lived in Houston, Texas, was a graduate professional engineer, had been employed by the City of Dallas in the Water and Sewage Department, and had been employed to design various water and sewage projects. The witness testified that he had visited the Blanco River and the sewage treatment plant, had looked at the outfall line where it discharges into the river; that he reviewed the records of the plant; that the method of treatment is a well known process; that the discharged effluent is not palatable water or clean. The witness went

into detail as to the operations of the plant and conditions surrounding such and the river bed and water holes and offered many exhibits. The testimony of the witness is very extensive and we do not attempt any further summary.

Dr. Todd, specializing in pathology, called by the plaintiff, testified as to his training and experience and that he had maintained a laboratory in San Antonio since 1931, and makes tests on water and sewage to determine whether or not germs and bacteria are present; that he had made tests of the effluent from the San Marcos plant in August and September of 1954 and detected the presence of B. coli organism in the effluent; that the conditions existing in the Blanco River are both a health hazard and a nuisance.

The plaintiff testified that he was a farmer and had a real estate license also; that he lived on the Blanco River and that the conditions of the river are bad, the stink, sludge, filth and disease had rendered his home unlivable because of the discharge from the sewer plant; that the value of his property had been destroyed for a subdivision.

The witness related his efforts to secure some improvement in the conditions in the river and of his conversation with the city officials and of his improvements and overall costs. The witness testified further with reference to tests and samples taken from his well and finally that he could no longer live on the river.

Orville Wyss, called by plaintiff, testified that he lived in Austin, Texas and was a Professor of Bacteriology in the University of Texas, detailing his education and training; that he made tests on the effluent from the discharge pipe from the sewer plant into the river and found B. coli present, and samples taken from the splash pool showed B. coli present in great numbers. That the water in the holes in the river was covered with scum and that these conditions were a hazard to health; that the conditions were conducive to breeding of mosquitoes; this witness went into detail

in describing the conditions about which he was testifying.

A. T. Harper, called by plaintiff, testified that he knew Mr. Holt and had seen the Holt place in 1953 and had observed very bad odors coming from the river; on another occasion he observed that the water was covered with green scum, filthy looking, sedative with putrid smell. The witness had considered purchasing the camp, but would not because of the conditions.

Witness Schawe for plaintiff testified that he lived close to the Blanco River for about seven years and was familiar with the flow of water and that since the sewer plant had been put in the odor was like human waste when the wind blew from the plant and he could not go outside because of the bad smell; the water in the holes on the Holt property was covered with green scum.

E. R. Owens testified that he was a water well driller and drilled a well for Mr. Holt in 1951; that he smelled the sewer odors and had observed the water holes in the river and that the water was clear and clean and had no bad odors but since the sewer flow the water is covered with moss and slime.

David Smallhorst, a graduate civil engineer, and an employee of the State Health Department for fifteen years, doing sanitary engineering work in charge of sewage and water pollution control, testified that he had consulted with officials of the City of San Marcos concerning its disposal plant in 1950, and urged the employment of an experienced consulting engineer to design a modern plant, which the City did, and such proposal plans were submitted to the Department. That the plans showed that an outfall pipe would lead to the Blanco River, which plans were approved by his Department. The plans indicated and the Department determined that the plant was capable of producing an effluent which would comply, as interpreted, with the anti-stream pollution of Texas. The witness went into a technical discussion of the figures and calculations of the plant and a determination of the designed plan.

Mr. Smallhorst further testified that from time to time he had reviewed the efficiency of the completed plant and that its operation was satisfactory, and in his opinion the plant is functioning as designed and is producing a satisfactory effluent as concerns biochemical oxygen demand (B.O.D.) and did not constitute a violation of the anti-pollution statutes. That the water or effluent discharged from the plant into the river is clean and sanitary and has been chlorinated and has no pathogenic germs, and not hazardous to the health of anybody; that ordinary river water has about 6 B.O.D. and this effluent has about 8 B.O.D.

Charles L. Davis, a witness called by defendant, testified that he had a degree in Biology and was connected with the State Health Department as an engineer's assistant, directly under W. S. Weiss, District Engineer at Kerrville, Texas, and had made a study of the San Marcos sewer plant in September, 1954, sampling the effluent for 24 consecutive hours and that no one connected with the plant knew he was coming, and detailed his actions and tests and submitted his samples of water to the Chemical Laboratory of the State Health Department, and later saw a chemical analysis on the samplings and later made a report to the State Health office. The analysis was made by the Department and the several laboratory findings were read to the jury. The report made by Mr. Davis was a detailed account of the plant, its facilities, actions and disposal of the effluent. The report in summary stated that there was very little change in the chemical quality of the waters of the Blanco River, that the plant was kept in a very satisfactory manner, very little odor being noticed, called for continued chlorine residual tests, and for monthly operational sewage reports to be submitted to the Department.

A. C. Riba, called by defendant, a bacteriologist in charge of sanitation, employed by the State Health Department for 13 years, testified as to certain tests on two water samples in January, 1955, taken by Mr. Burwell from the San Marcos sewer plant and found no coliform organisms present.

Jack Majors, called by defendant, testified concerning odors on the river and as to conditions generally, the presence of livestock in the river bottom.

Milton Jowers, called as a witness by the defendant, testified concerning a visit to the Holt property as a prospective purchaser, and thought that the increased water supply from the sewer plant would increase the value of the property.

Other testimony was had as to the value of appellant's property and as to the condition of the river and as to tests on the effluent from the plant and generally to the effect as hereinabove given.

The summary of the testimony adduced by the appellant and appellee in the trial of this case, together with many exhibits consisting of plats, maps, photographs, all tend to depict the condition of the plant, its operation and its discharge of water or effluent, the Holt property, Blanco River, the conditions of river, its water holes and the presence of matter in the river, all in sharp conflict from the position of appellant and that of the appellee were before the court and jury.

Our summary may not recite as much of the testimony as would be more desirable but the record is too extensive to endeavor to reproduce even a larger part thereof.

The jury, however, saw the witnesses, heard all of the testimony, saw and observed the exhibits, and resolved the fact issues in favor of the appellee thereby finding that no objectionable matter was caused to come upon plaintiff's land, and that the operation of the plant did not constitute a nuisance and that no depreciation in market value of appellant's land has been caused.

■ The burden rested on appellant as plaintiff to discharge his burden of proving by a preponderance of the evidence his allegations charging appellee as defendant with discharging its sewage effluent into the river to his injury and damage.

■ We believe that it was for the jury to determine the facts and that the findings are reasonably supported by the evidence.

■ The burden was on appellant to show by a preponderance of the evidence that a nuisance existed as a fact, and was triable as any other fact issue.

Vestal v. Gulf Oil Corp., 149 Tex. 487, 235 S.W.2d 440.

■ The jury having answered the issues favorable to appellee, the evidence must be viewed most favorably to appellee.

Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365.

By his pleadings appellant sought damages to his property because of the discharge of the sewer effluent into the river bed causing the objectionable accumulation of such effluent in water holes, and percolation of those waters under his land constituted a taking of his land and created nuisance conditions which amounted to taking, damaging or destroying for or applying to public use of his land.

■ Appellee has the power to own and operate a sanitary sewer system given by statute, and in doing so exercises a governmental function and may discharge its sewer water into a natural water course subject to not injuring a lower landowner and subject further to the pollution statutes.

Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565.

■ Our Constitution, Article I, § 17, Vernon's Ann.St., defines a right and fixes a remedy whereby compensation may be had for property taken, damaged for public use, and this remedy is exclusive.

Miller v. Letzerich, 121 Tex. 248, 49 S.W. 2d 404, 85 A.L.R. 451.

The jury found that appellant's property was not depreciated in value as a result of appellee's operation of its sewer plant and such finding is supported by the

record. In connection with the value of appellant's property much testimony was given by the respective parties, some of which was by experts and other by lay witnesses and the jury was charged with determining the fact issues.

Simmonds v. St. Louis, B. & M. Ry. Co., Tex.Com.App.1936, 127 Tex. 23, 91 S.W.2d 332; Steele v. City of Anson, Tex. Civ.App., 229 S.W.2d 948.

Having concluded that the findings of the jury have reasonable support in the record we overrule appellant's points through number six.

By points numbers seven through thirteen appellant complains of misconduct of the jury, certain witnesses and of counsel for appellee.

We do not believe that the conduct complained of, if it occurred, was such misconduct as caused probable injury to appellant.

The trial court had before it motions and the affidavits concerning alleged acts constituting misconduct and heard the evidence in connection therewith and overruled appellant's motion for a new trial and declined to enter judgment for appellant notwithstanding the verdict of the jury.

█ The burden was on appellant under Rule 327, T.R.C.P. of proving by a preponderance of the evidence that such misconduct occurred and also of showing that such misconduct probably resulted in injury to him. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

██ The trial court after an exhaustive hearing found that the misconduct did not occur, and we believe the court was justified in his judgment. No findings of fact were made or filed and none were requested. We must consider the testimony with reference to jury misconduct in the light most favorable to the findings of the trial court that the misconduct did not occur. We are refraining from a discussion of the evidence farther than to say that we do not believe that appellant discharged his bur-

den and that the evidence supports the court's action.

Andrews v. Dewberry, Tex.Civ.App., 242 S.W.2d 685, er. ref., n. r. e.; Highway Ins. Underwriters v. Roberts, Tex.Civ.App., 224 S.W.2d 903, er. ref.; City of Dallas v. Hutchins, Tex.Civ.App., 226 S.W.2d 155, er. ref.

█ We do not believe that the argument of counsel for appellee complained of was so improper as to have caused injury to appellant.

The argument in brief was that in a technical sense the jury was rendering a judgment in its verdict, and that as counsel saw it the jury in carrying out its duty would have to say "no" to Special Issues Nos. 1, 2, and 3, and that if the jury found in answer to Special Issue No. 3 that there is no depreciation in the market value, that counsel did not think there would be any difficulty in answering Issues Nos. 4 and 5, and that a fair construction of all the evidence is that we must say "no" to Mr. Holt. Another counsel of appellee commented that he knew of no reason the land had gone up five or six times, only because (Mr. Holt) owned it; that the City has not hurt him, but has helped him, and that witnesses have testified to that.

Appellant did not in open court make any objection to the instances of alleged improper argument, and appellee was deprived of rulings by the trial court and of an opportunity to make explanative retraction or apology.

41–B Tex.Jur. pp. 348–351, Sec. 289; Benoit v. Wilson Tex.Civ.App. 258 S.W.2d 134, er. ref., n. r. e.; Texas Indemnity Ins. Co. v. Bonner, Tex.Civ.App., 228 S.W.2d 348, er. ref., n. r. e.

█ Counsel is allowed reasonable latitude in arguing a case submitted on special issues.

41–B Tex.Jur. p. 757 and cases cited; Burrow v. Davis, Tex.Civ.App., 226 S.W.2d 199, er. ref., n. r. e.

In Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, the Court stated that before a judgment is reversed because of argument of counsel it must appear that the argument was improper, and reasonably calculated to cause and probably did cause the rendition of an improper judgment, etc.

We do not believe that the admission of the listing card for the limited purpose was so harmful or if so the same was cumulative of other evidence.

 The listing card was admitted for the purpose of showing the value Mr. Holt had placed on the 65 acre tract of $40,000. There was other testimony that appellant had listed the land at $40,000, and appellant had testified that he had listed the property at $45,000 and at $35,000, and there was no question as to the land being the land involved in the suit.

Hix v. Wirt, Tex.Civ.App., 220 S.W.2d 530, er. ref., n. r. e.; Rule 434, T.R.C.P.

We do not believe the court erred in admitting question and answer No. 50 from the deposition of E. S. Sutton and if so same was harmless and probably waived.

The appellant did not object to the question and answer at the time it was admitted in evidence and nothing was before the court to act on.

We believe that witness Sutton was properly allowed to state his opinion of the market value of the land. At the time this evidence was tendered no objection was made. There was much testimony as to the value of the land both for subdivision and agricultural purposes, and Sutton's testimony was as to its agricultural value.

■ Complaint is made of the admission of the testimony of witness Jowers who testified that he made an offer to buy the property for $48,000. This testimony was admitted without objection.

There was other testimony as to the offer of Jowers to buy the property and the testimony of Jowers was cumulative.

Peerless Oil & Gas Co. v. Teas, 138 Tex. 301, 158 S.W.2d 758.

Finding no reversible error the judgment of the trial court is affirmed.