Jim C. GRAHAM, Plaintiff in Error,

v.

CITY OF DUNCAN, Oklahoma, a municipal
corporation, Defendant in Error.

No. 38593.

Supreme Court of Oklahoma.

June 14, 1960.

Rehearing Denied Aug. 2, 1960.

Brown & Brown, Duncan, for plaintiff in error.

Jerome Sullivan, Duncan, for defendant in error.

DAVISON, Chief Justice.

Jim C. Graham instituted this action January 9, 1957, against the City of Duncan to collect damages for the alleged destruction of a broomcorn crop of the value of $5,274.25. The parties will be referred to as Graham and City.

In his petition Graham alleged he had leased land in Stephens County, Oklahoma, from his father, the then owner of the land, for the year 1956 and had planted thereon 44 acres of broomcorn before the City condemned the land; that the appraisers (commissioners) in the condemnation proceeding did not include the broomcorn in their appraisement; that the crop was partly matured when the City unnecessarily cut the crop down and plowed up the land. He alleged the value of the crop so destroyed and prayed judgment in the above stated amount.

The City answered by general denial and also alleged the filing and completion of its condemnation proceeding in Cause No. 17222 and related the proceedings had therein (hereinafter described); and that the judgment therein constituted res judicata and estoppel by judgment as to the issue of Graham's broomcorn damage.

Graham's reply was that the question of broomcorn damage was withheld from the condemnation proceeding (No. 17222) and that res judicata and estoppel by judgment did not apply.

In the hearing on the question of res judicata and estoppel by judgment, the pleadings, instructions to the jury, journal entry and portions of the testimony in the condemnation proceeding were introduced in evidence. The court held the plea of res judicata and estoppel by judgment should be sustained and rendered judgment against Graham and in favor of the City. Graham has appealed to this court.

It appears from the record that on April 20, 1956, the City filed its petition in cause No. 17222 in the District Court against Graham and his wife and others to condemn the surface of certain lands, including the land leased to Graham, for a reservoir. Notice was served on Graham and other defendants, including the fee owner of the land. On the date set the City and the defendants appeared by their respective attorneys and commissioners were appointed. The commissioners filed their report. The commissioners made no mention of the lease or broomcorn crop.

Graham and his father and their respective spouses filed demand for jury trial. So far as the record reflects no answer was filed by Graham in the condemnation proceeding. On June 1, 1956, the City deposited with the court clerk the amounts set forth in the commissioners' report.

Thereafter and in July, 1956, the City cut and destroyed the broomcorn with a stalk cutter and plowed up the land. On October 27, 1956, Graham filed his claim with the City for damages for loss of the broomcorn.

The condemnation proceeding (No. 17222) came on for trial before a jury on October 29, 1956. On examination by attorneys of both sides Graham testified as to the 44 acres producing "a ton to three acres" or around 12.6 tons of broomcorn of the net value of $425 per ton or $5,200 or $5,300. At this point counsel for Graham in effect announced a claim had been filed with the City for this and that it was not in the suit. The court thereupon advised the jury as follows:

"Let the jury disregard then any claim for broomcorn or damage to the tractor because that's in another matter between he and the City of Duncan; it's not in this case at all."

In the condemnation proceeding the court instructed that the City took possession June 1, 1956, and instructed as to recovery by Graham for his undivided interest in lands other than the broomcorn land and in addition as to damages suffered because of the City taking possession of lands upon which Graham had an agricultural lease, including the broomcorn land, for the year 1956. No mention was made in the instructions as to the broomcorn. The jury in addition to his other recovery returned a verdict for Graham on account of the agricultural lease for $1,700. Judgment was rendered thereon and title to the surface was decreed in the City. The journal entry contains no mention of the broomcorn or as to any reservation relative to any rights against the City on account of damages by reason of loss of the broomcorn.

Graham subsequently was paid from money deposited with the court clerk. No appeal was taken by either party.

The lower court in the present case, after consideration of the facts and circumstances related above, made findings of fact and conclusions of law. The court found that Graham had recovered his damages for his agricultural lease in the condemnation proceeding; that the subject matter of both the condemnation proceeding and the present action was the same; that the City injected the question of damages to the broomcorn into the condemnation proceeding and that Graham objected to any evidence thereon as improper because of a pending claim therefor with the City and that the court instructed the jury not to consider the same. The court further found that neither the City nor its attorneys adopted any procedure, nor by fraud or misrepresentation, prevented Graham from including his broomcorn damage in the condemnation proceeding. The court then sustained the plea of res judicata and estoppel by judgment.

Graham presents the single proposition that the lower court erred in sustaining the plea of res judicata and estoppel by judgment.

A determination of the correctness of the judgment of the lower court requires an examination of the purpose and nature of an eminent domain proceeding; the rights and burdens of the parties and the effect of the judgment upon the claims of the parties to the judgment.

The city filed and prosecuted the eminent domain proceeding pursuant to 11 O.S.1951 § 292 et seq., and Sec. 24, Art. 2, of the Oklahoma Constitution. Thereunder the exercise of the right of eminent domain is subject to the constitutional right of the owner of the property to just compensation. The procedure followed is prescribed by 66 O.S.1951 § 53 et seq.

■ A condemnation proceeding brought to obtain private property for public use is a special proceeding and not a civil action. Oklahoma Turnpike Authority v. Dye, 208 Okl. 396, 256 P.2d 438; McCrady v. Western Farmers Electric Co-operative, Okl., 323 P.2d 356. Condemnation proceedings do not involve a tort and are not civil actions at law or suits in equity, but are special statutory proceedings for the purpose of ascertaining the compensation to be paid for the property proposed to be appropriated, to be carried out in accordance with the methods prescribed by the legislature for the condemnation. Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 123 A.L.R. 662; Epperson v. Johnson, 190 Okl. 1, 119 P.2d 818.

■ Graham filed no answer in the condemnation proceeding but this was immaterial to his right and privilege to present to the court and jury at the trial all injuries and damages that he had suffered by reason of the appropriation of his property to public use. This court has held that Graham was not required to answer and plead the elements of his damage but that it rested in the discretion of the trial judge as to whether such pleading should be filed. City of Tulsa v. Creekmore, 167 Okl. 298, 29 P.2d 101; Incorporated Town of Pittsburg v. Cochrane, 200 Okl. 497, 197 P.2d 287, 291.

■ The term "property" as used in our Constitution regarding the taking of private property for public use for which just compensation must be paid includes not only real estate held in fee, but also easements, personal property and every valuable interest which can be enjoyed and recognized as property. Southern Kansas Ry. Co. v. Oklahoma City, 12 Okl. 82, 69 P. 1050. It includes the crops of a tenant. Cities Service Gas Co. v. Williams, 200 Okl. 525, 198 P.2d 204. It follows that the taking and appropriation of the broomcorn crop of Graham in connection with the taking of the land for a public use was an element of injury or damage for which Graham was entitled to be compensated.

■ Graham contends in his present action that there was no necessity for the City to cut down and destroy the broomcorn at the time that it did so. The record reflects the condemnation suit was filed April 21, 1956; that the broomcorn was cut down and land plowed up in July, 1956, and claim filed with the City October 27, 1956, and that the trial was begun October 29, 1956. It is obvious that the question of necessity of the taking of the broomcorn by the City was presented and had existed for a considerable time prior to the trial.

Ordinarily, the question of necessity of the taking presented in a condemnation proceeding involves the taking, in whole or in part, of a tract of land or an estate less than the fee, or of objects resting thereon, or of plants and crops growing thereon, all of which are presently existing. In the condemnation proceeding presented here, the broomcorn, at the time of trial, had already been taken and appropriated by being cut and plowed under. The broomcorn was not in existence as a standing and worthwhile crop. However, it is not for this court to determine the necessity for the City to take and appropriate the broomcorn in the manner that it did so, but to determine whether Graham erred in failing to present this matter to the trial court.

The taking of property accomplished by eminent domain is regarded as being a forced sale. The owner is forced into the matter. Graham could not contest the right of the City to exercise the power of eminent domain since the legislature had granted this power to the City. However, Graham could have contested the fact of the necessity of taking and the extent of the taking. Need for taking the particular property and the extent of the taking and the compensation for the taking are to be judged by the conditions existing at the time of the taking. When Graham did not contest the need for taking the broomcorn and did not question the extent of the taking, it is reasonable to assume that he waived the objections. Fischer v. Oklahoma City, 198 Okl. 22, 174 P.2d 244.

■ What we have heretofore stated establishes that the question of the amount of compensation for the broomcorn was a matter for determination at the trial of the proceeding. There is, however, another aspect of the situation which supports this conclusion. The broomcorn was planted and growing upon land owned by Graham's father and upon which Graham had an agricultural lease. Their respective interests in the surface were taken. Obviously, the broomcorn was cut and the land plowed in preparation of the land for reservoir purposes. Insofar as the broomcorn was concerned the work was completed. Having been appropriated in toto no further work would do further damage to the broomcorn. All parties were cognizant of such fact. Under such a state of facts the applicable rule was as announced in Cities Service Gas Co. v. Huebner, 200 Okl. 521, 197 P.2d 985, 988, 989:

> "* * *. We are committed to the rule that, where the trial is had after the works are completed, it is proper to assess the damages on the basis of the facts existing at the time of the trial, since the element of conjecture and speculation is then absent. State v. Winters, 195 Okl. 243, 156 P.2d 798; Arkansas Valley & W. Ry. Co. v. Witt, 19 Okl. 262, 91 P. 897, 13 L.R.A.,N.S.,

237. The rule allowing the jury to consider the damages resulting from trespass or negligence, where the works are completed at the time of the trial, is based upon two reasons, (1) to avoid a multiplicity of suits as stated in Arkansas Missouri Power Co. v. Killian, 225 Mo.App. 454, 40 S.W.2d 730, 732, and to avoid placing an undue burden upon the condemnee, whose property is taken without his consent, and (2) that the condemnor should not be heard to urge its own wrongs to mitigate the damages, as said in United Power & Light Corporation v. Murphy, 135 Kan. 100, 9 P.2d 658, 663. * *"

This construction of the situation also answers and renders immaterial the alleged defect, if any, that the commissioners report did not include an appraisal of value of the broomcorn.

■ The burden of presenting the elements of damage and the amounts thereof was upon Graham as owner of the interest and property being taken or damaged. Western Farmers Electric Coop. v. Rowlett, Okl., 288 P.2d 726; Nichols v. Oklahoma City, 195 Okl. 305, 157 P.2d 174.

As stated and shown above a condemnation proceeding is a special statutory proceeding. It is to be accomplished in a way prescribed in the condemnation act. When the right to condemn and the matter of necessity to take has not been questioned the inquiry is confined to the question of what compensation is to be allowed for the property taken. These are the issues. It is a special proceeding to determine in a single action the damages done by the taking. Epperson v. Johnson, supra; East Bay Municipal Utility Dist. v. City of Lodi, 120 Cal.App. 740, 8 P.2d 532, 541.

This court has held that where the statutes have provided an adequate remedy for the determination of damages to private persons for property taken or damaged for public use, such remedy is exclusive. Stedman v. State Highway Commission, 174 Okl. 308, 50 P.2d 657 (overruled on other grounds in State Highway Commission v.

Brixey, 178 Okl. 118, 61 P.2d 1114); Oklahoma City v. Wells, supra; Holt v. City of San Marcos, Tex.Civ.App., 288 S.W.2d 802, 809. The Stedman and Wells cases make certain exceptions to this general rule where the special proceeding is not available to the private person or the damage is occasioned by construction and operation subsequent to the condemnation proceeding. These exceptions did not exist in the condemnation proceeding under discussion since the broomcorn was appropriated by the City in connection with the taking of the land upon which it was grown and the proceeding was pending and available to Graham.

In State of Oklahoma v. Adams, 187 Okl. 673, 105 P.2d 416, 418, this court approved a statement in 20 C.J. 1068 (29 C.J.S. Eminent Domain § 328, p. 1370) when we stated:

> "* * * that the owner must recover in one action 'all damages which have resulted, or are reasonably liable to result in the future, from a proper construction or operation of the improvement, and that no subsequent action will lie to recover for items which were or might have been considered in the original proceeding.' "

In Nichols on Eminent Domain, Third Edition, Vol. 6, Sec. 24.2(3), pp. 36–37, it is stated:

> "After judgment has been entered, it is conclusive as to all damages which were or might have been included in the award, and the owner cannot thereafter maintain an action at common law for such damages."

It is our conclusion from the authorities set forth herein that the broomcorn was an element of injury or damage recoverable only in the condemnation proceeding and that having failed to satisfy the burden placed upon him to present and prove the same therein Graham is barred from maintaining the present suit.

Graham contends however that in the condemnation proceeding the trial court struck out the issue of whether Graham was entitled to recover damages for the destruction of the broomcorn. This is not an entirely correct interpretation of the facts or of the action of the court. The matter of compensation for the broomcorn was introduced into the trial by Graham. On direct examination by Graham's counsel and cross-examination by City's counsel the testimony revealed the number of acres, yield, expense and net value. At this point both Graham and his counsel advised the court claim had been filed with the City for this and it was not in the suit. The court then made the statement hereinbefore quoted directing the jury to disregard the claim for broomcorn. This element of damage was not removed or stricken at the request of City nor by the court of its own volition. It was withdrawn by Graham. In its findings of fact and conclusions of law the trial court stated:

> "The court further concludes that the plaintiff, Jim C. Graham, was not prevented by the court from litigating his damages, if any, by reason of the taking and destroying of his broom corn, but the said Jim C. Graham by his own action elected to separate his cause of action and to file a separate suit for a portion of his alleged damages."

We know of no rule of law making it incumbent upon the City or the court to require or compel Graham to present and prove this element of damage in the condemnation proceeding. The law placed the burden on Graham to do this. The record amply sustains the findings and conclusions of the trial court in the instant action that neither the City nor its attorneys adopted any procedure or by any fraud or misrepresentations precluded or prevented Graham from including and recovering for his broomcorn in the condemnation proceeding.

The law provided a special procedure and a forum for the determination and recovery of compensation for all injuries and damages for the taking of the property for public use. Under the authorities above set out Graham was required to present all existing claims for compensation for

determination in this single proceeding. Failure to do so constituted a waiver thereof and his present action is barred.

It is also pointed out that the judgment rendered in the condemnation proceeding did not expressly except or reserve to Graham the right to or claim for compensation for the broomcorn or the right to take further action for recovery. As a consequence thereof the judgment was a bar to such matter and is res judicata of all matters growing out of the condemnation which were or might have been presented for consideration. Hugh Breeding, Inc. v. Godwin, 208 Okl. 617, 258 P.2d 157.

Judgment of the trial court is hereby affirmed.

WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON and JACKSON, JJ., concur:

BLACKBIRD, IRWIN and BERRY, JJ., dissent.

BERRY, Justice (dissenting).

I am unable to agree with the majority opinion.

In support of its defense based upon the doctrine of res judicata the City offered in evidence the judgment roll in the condemnation proceeding and also offered in evidence the hereafter-referred-to transcript covering matters which occurred during trial of said proceeding.

In the petition, notice, order appointing commissioners, report of commissioners and demand for jury trial filed in the condemnation proceedings, no mention was made of crops or damage to crops. In the report of the commissioners Graham was awarded damages of $2,500 to his dairy, but the dairy business was not conducted on the land upon which the broomcorn was planted. The jury, by its verdict, awarded Graham $2,950 as damages resulting from the City taking his 5/80ths interest in Tract No. 1 and awarded "damages by reason of the City taking possession of land on which (Graham) had an agricultural lease for 1956, being Tracts 1 and 2, and fix the amount of his damage at $1,700.00." The broomcorn was planted on Tract No. 2. The verdict of the jury was quoted in the court's judgment thereon, which judgment provided that Graham "have and recover * * * the sum of $4,650.00." No mention of the broomcorn crop was made in said judgment. In the instant case the trial court found that "The item of broomcorn damage was not submitted to the jury" in the condemnation proceeding and that the jury was instructed not to consider said damages.

The referred-to judgment roll in my opinion does not clearly show that the issue presented by the instant case was adjudicated in the condemnation proceeding. This fact may have caused the City to introduce in evidence the transcript which shows that mention was made of said issue (damages to the broomcorn crop) at trial of said proceeding, but which also shows that said issue was in fact reserved for trial at a later date. In view of the fact that the City introduced the transcript in evidence, it is bound by the matters shown therein (32 C.J.S. Evidence § 1040, p. 1113 and 20 Am.Jur. "Evidence", Sec. 915, p. 771) and is not in a position to urge that said transcript constitutes extrinsic evidence that may not be considered in construing the judgment roll that it introduced in evidence. To my way of thinking, the transcript shows that the City's defense based upon res judicata is not well taken.

In a statement relative to the basis of the doctrine of res judicata, it is stated in 30A Am.Jur. "Judgments", Sec. 326, p. 373, that "The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. The doctrine of res judicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings."

I am of the opinion that this is not a case where the City would be harassed or vexed, nor would the dignity that should be given judgments of courts be impinged upon by permitting Graham to assert the cause of action that he here seeks to assert. The hereafter-referred-to transcript shows that in the eminent domain proceeding the following occurred during counsel for the City's cross examination of Graham:

"By Mr. Brown: If the court please, I want to object to this as improper cross-examination. I didn't ask him anything about this at all. Furthermore, he has filed a claim with the City of Duncan on that, filed along two or three months ago.

"By the Court: It is improper cross-examination. He didn't bring it out in direct examination.

"By Mr. Paul Sullivan: All I was trying to find out is what he is claiming damages for here, Your Honor.

"By Mr. Brown: We are not claiming damages on that in this law suit.

"By the Court: It's improper cross examination; it's something you're bringing out that the defendant did not bring out in his direct examination; it's improper.

"Q. All right. Now, is that all the damages now that you have that you want the City to pay for?

"A. In this suit? Yes, sir.

"Q. In this suit? All right, that's what I am asking you?

"A. Yes, sir."

On redirect examination, one of Graham's counsel asked Graham a question relative to destruction of his broomcorn crop. Upon being reminded by co-counsel that said matter was not in issue the following transpired:

"Q. I didn't understand that. You filed a claim with the City for your broomcorn in addition to this suit here?

"A. Yes, sir.

"Q. And that's not in this suit here, is that right?

"A. That's right.

"By the Court: Let the jury disregard then any claim for broomcorn or damage to the tractor because that's in another matter between he and the City of Duncan; it's not in this case at all."

It will be noted that counsel for the City acquiesced in Graham's action in reserving for later trial the matter of damages that were sustained because of destruction of the broomcorn crop and that the trial judge specifically advised the jury that the claim for broomcorn damages was not in the case "at all".

I am of the conviction that a party to litigation should not be permitted to acquiesce in the other party expressly reserving an issue for subsequent trial and defeat trial on the reserved issue by urging the doctrine of res judicata. In 29 C.J.S. Eminent Domain § 328, p. 1371, this is said:

"However, the judgment is not conclusive as to items of damage which were not in issue or within the scope of the issues, or with respect to which the owner's right to sue was expressly reserved. * * *"

At p. 168, § 711, 50 C.J.S. Judgments, this is said:

"A judgment or decree is not conclusive as to questions which it reserves or excludes, either expressly or in effect, but its conclusiveness as to matters not so reserved is not affected by the reservation. The reservation is res judicata of itself, that is, of the fact that certain questions are reserved."

In Moses et al. v. Town of Morganton et al., 195 N.C. 92, 141 S.E. 484, the Supreme Court of North Carolina held that landowners were not estopped from suing for damages for pollution of stream adjacent to their premises, nor was their cause of action rendered res judicata as against power company which condemned their

land, where issue of damage from pollution of water was withdrawn from condemnation suit by leave of court.

This Court is committed to the rule that a judgment which excludes or reserves a particular question is not res judicata as to said question. See Powell Bros. Truck Lines, Inc. v. State ex rel. Green, 177 Okl. 568, 61 P.2d 231; Cuneo et al. v. Champlin Refining Co. et al., 178 Okl. 198, 62 P.2d 82, and Rucker et al. v. Campbell, 180 Okl. 580, 71 P.2d 718.

It is pointed out in 30A Am.Jur., Sec. 325, p. 372, that the doctrine of res judicata "is to be applied in particular situations as justice and sound application of the policy behind the doctrine require; it is not to be applied so rigidly as to defeat the ends of justice or to work an injustice."

The record clearly shows that Graham owned the broomcorn crop; that the City destroyed same; that Graham sustained damages as a result of said destruction; that upon Graham making known to the court that he wished to reserve for trial at a later date his asserted right to recover said damages the court stated "Let the jury disregard then any claim for broomcorn or damage to the tractor because that's in another matter between he and the City of Duncan; it's not in this case at all."; that the City acquiesced in said reservation and that Graham has never had a trial on said reserved issue. The majority opinion establishes that if the doctrine of res judicata is applied to Graham's instant action he will be unable to recover because of the destruction of his broomcorn crop.

Under the facts of this case, I am convinced that the doctrine of res judicata should not be applied because to do so would manifestly defeat the ends of justice and work an injustice.

For reasons stated, I respectfully dissent to the majority opinion.

I am authorized to state that BLACKBIRD and IRWIN, JJ., concur in the foregoing dissenting opinion.